Sean J. Kirby
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701
skirby@sheppardmullin.com
*Attorneys for Defendant 380 Second LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

MILAGROS FRANCO,

             Plaintiff,

      v.

380 SECOND LLC AND SMALL DOOR
GRAMERCY LLC,

             Defendants.

------------------------------------------------------------ x

: Civil Action No. 1:22-cv-04011-AS-JW
:
:
:
:
:
: <u>ORAL ARGUMENT REQUESTED</u>
:
:
:
:
:
:

## <u>DEFENDANT 380 SECOND LLC'S MEMORANDUM OF LAW<br>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF MATERIAL FACTS..................................................................2

    A.    The Parties .......................................................................................2

    B.    Plaintiff's Lone Visit to the Facility in Early 2022...........................3

    C.    Plaintiff's Allegations of Inaccessible Features at the Facility...........4

    D.    Defendants Have Remediated Any Inaccessible Features at the Facility or No Such Remediations Were Needed ...................................5

        1.    Entrance and Exit of the Facility ...................................5

        2.    Interior Ramp ................................................................6

        3.    Reception Area...............................................................6

        4.    Toilet Room ...................................................................7

        5.    Exam Room ....................................................................7

    E.    Procedural History ..........................................................................8

ARGUMENT ..........................................................................................................9

II.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF 380 SECOND WITH RESPECT TO PLAINTIFF'S CLAIMS IN THE COMPLAINT........10

    A.    Plaintiff's ADA Claim Should Be Dismissed Because She Lacks Standing to Assert Such a Claim.....................................................10

    B.    Plaintiff's ADA Claim Should Be Dismissed Because Her Claim Has Become Moot Due to Remediations Made to the Property or Are Otherwise Moot Because No Such Remediations Are Required ...........................12

        1.    Entrance and Exit of the Facility .................................13

        2.    Interior Ramp ..............................................................14

        3.    Reception Area.............................................................14

        4.    Toilet Room .................................................................15

        5.    Exam Rooms.................................................................16

    C.    Plaintiff's NYSHRL, NYCHRL, and Civil Rights Law Claims Should Likewise Be Dismissed........................................................................18

        1.    Plaintiff's NYSHRL Claim and New York Civil Rights Law Claim Should be Dismissed for the Same Reasons as Plaintiff's ADA Claim .................................................18

        2.    Plaintiff's NYCHRL Should be Dismissed Because Plaintiff Was Not Denied Access to the Facility .........................19

    D.     If Plaintiff's ADA Claim is Dismissed, Plaintiff's NYSHRL, NYCHRL, and Civil Rights Law Claims Should Be Dismissed Due to a Lack of Supplemental Jurisdiction .......................................................................................20

III.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF 380 SECOND WITH RESPECT TO ITS INDEMNIFICATION CROSS CLAIM AGAINT SMALL DOOR .............................................................................................21

CONCLUSION.......................................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Already, LLC v. Nike, Inc.*
  568 U.S. 85, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013)............................................................13

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986)................................................................................................................9

*Bacon v. Walgreen Co.*
  91 F. Supp. 3d 446 (E.D.N.Y. 2015) .....................................................................................13

*Calcano v. Swarovski N. Am. Ltd.*
  36 F.4th 68 (2d Cir. 2022) .....................................................................................................10

*Centi v. Fedigan*
  413 F. Supp. 3d 171 (S.D.N.Y. 2019)......................................................................................9

*Chapman v. Pier 1 Imports (U.S.) Inc.*
  631 F.3d 939 (9th Cir. 2011) .................................................................................................10

*Clear Channel Outdoor, Inc. v. City of New York*
  594 F.3d 94 (2d Cir. 2010).....................................................................................................13

*Dominguez v. Banana Republic, LLC*
  613 F.Supp. 3d 759 (S.D.N.Y. 2020).....................................................................................20

*Doran v. 7-Eleven, Inc.*
  524 F.3d 1034 (9th Cir. 2008) ...............................................................................................16

*Garcia v. Barclays Capital, Inc.*
  281 F. Supp. 3d 365 (S.D.N.Y. 2017)......................................................................................9

*Garnet v. Ramos Bros. Inc.*
  No. 16 CV 2792 (RJD)(LB), 2017 WL 590323 (E.D.N.Y. Feb. 13, 2017)...........................20

*Graves v. Finch Pruyn & Co.*
  457 F.3d 181, 184 n.3 (2d Cir. 2006).....................................................................................18

*Hubbard v. 7-Eleven, Inc.*
  433 F.Supp. 2d 1134 (S.D.Cal. 2006) ....................................................................................14

*K.L.M.N.I, Inc. v. 483 Broadway Realty Corp.*
  987 N.Y.S.2d 316 (N.Y. App. Div. 2014) ..............................................................................23

*Kreisler v. Humane Soc'y of N.Y.*
  2018 WL 477891 (S.D.N.Y. 2018).................................................................16, 17

*Lowell v. Lyft, Inc.*
  352 F. Supp. 3d 248 (S.D.N.Y. 2018)............................................................19, 20

*Lujan v. Defenders of Wildlife*
  504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).......................................10

*Norman v. NYU Langone Health Sys.*
  492 F.Supp.3d 154 (S.D.N.Y. 2020)..............................................................20, 21

*Range v. 535 Broadway Grp. LLC*
  No. 17CV0423, 2019 WL 4182966 (S.D.N.Y. Sept. 3, 2019) ...........................18, 19

*Roberman v. Alamo Drafthouse Cinemas Holdings, LLC*
  67 Misc. 3d 182 (Sup. Ct. Kings Cty. 2020) ........................................................19

*Robinson v. Concentra Health Servs.*
  781 F.3d 42 (2d Cir. 2015)......................................................................................9

*Ross v. Royal Pizza Cafe Corp.*
  No. 17CV6294FBRML, 2018 WL 6313208 (E.D.N.Y. Aug. 1, 2018).....................18

*Scheiner v. ACT Inc.*
  No. 10-CV-0096 RRM RER, 2013 WL 685445 (E.D.N.Y. Feb. 24, 2013)............13

*Senno v. Elmsford Union Free School Dist.*
  812 F. Supp. 2d 454 (S.D.N.Y. 2011)....................................................................9

*Taggart v. Colonial Hotel*
  2007 WL 9702259 (S.D. Fla. Oct. 29, 2007).......................................................12

*Talavera v. Astrue*
  697 F.3d 145 (2d Cir. 2012).................................................................................9

*Valencia ex rel. Franco v. Lee*
  316 F.3d 299 (2d Cir. 2003).................................................................................20

*Vogel v. Sym Props., LLC*
  2017 WL 4586348 (C.D.Cal. Aug. 4, 2017).........................................................12

## STATUTES

28 U.S.C. § 1367(a) ...................................................................................................20

28 U.S.C. § 1367(c)(3).................................................................................................20

Americans with Disabilities Act ............................................................................ passim.

N.Y. City Human Rights Law ............................................................................... passim.

N.Y. State Civil Rights Law ................................................................................. passim.

N.Y. State Human Rights Law ............................................................................. passim.

**OTHER AUTHORITIES**

FRCP, Rule 12(b)(1)................................................................................................1

FRCP, Rule 56 ...................................................................................................1, 9

https://www.ada.gov/resources/medical-care-mobility/ ...........................................14

United States Constitution Article III ............................................................10, 12, 20

Defendant 380 Second LLC ("380 Second"), by and through its undersigned attorneys, respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment (the "Motion") pursuant to Rules 56 and 12(b)(1) of the Federal Rules of Civil Procedure seeking summary judgment in favor of 380 Second with respect to (i) the entirety of the complaint (Dkt. No. 1) (the "Complaint") filed by Plaintiff Milagros Franco ("Plaintiff"), and (ii) its Cross Claim for contractual indemnification against Defendant Small Door Gramercy LLC ("Small Door").

## PRELIMINARY STATEMENT

Plaintiff has asserted claims in this Action for alleged violations of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York State Civil Rights Law ("Civil Rights Law") arising out of one visit to the Small Door Vet practice located at 380 Second Avenue, New York, New York (the "Facility"). As set forth in detail below, each of these claims should be dismissed as a matter of law.

With respect to Plaintiff's ADA claim, such claim should be dismissed for two independent reasons (i) Plaintiff lacks standing because she lacks an intent to return to the Facility, and (ii) all of the alleged inaccessible features have been remediated or otherwise do not need to be remediated under applicable law. Indeed, Plaintiff cannot establish standing because she admittedly only went to the Facility on one occasion nearly two years ago, she was able to access the Facility via the portable ramp Defendants maintained there, she was able to obtain all information sought during this visit, and she has not returned since or made an appointment for service since that time. Likewise, even if Plaintiff had standing, her ADA claim is moot because all alleged issues in the Facility have either been remediated or no remediation is necessary.

Similarly, Plaintiff's NYSHRL and Civil Rights Law claims should be dismissed for the same reasons as Plaintiff's ADA claims because the standard for analyzing such claims is the same

as the ADA standards.   Moreover, Plaintiff's NYCHRL claim should be dismissed because Plaintiff admitted she was able to access the Facility and, therefore, no denial of access occurred under the NYCHRL.   In the alternative, even if the Court does not dismiss the state and city claims on their merits, such claims should still be dismissed if the ADA claim is dismissed because the Court will lack supplemental jurisdiction over such claims.

Finally, the Court should grant summary judgment with respect to 380 Second's claim for contractual indemnification against Small Door because the express terms of the lease agreement provide for such indemnification.

<u>**STATEMENT OF MATERIAL FACTS**</u>

### A.      <u>The Parties</u>

Plaintiff Milagros Franco resides in New York, New York, and uses a wheelchair to ambulate due to a medical condition.  (Franco Dep. at pp. 4:8-13; 16:23-17:8).[1]  Plaintiff resides close to the Facility at issue in this matter.  (Franco Dep. at pp. 37:23-38:7).  Plaintiff has a pet cat and she takes her cat to the veterinarian approximately once every three months. (Franco Dep. at pp. 17:20-25; 23:13-25:6).  Plaintiff testified in her deposition that she currently takes her cat to a veterinary practice named First Avenue Vet, which is located approximately four to five blocks from her house. (Franco Dep. at pp. 25:7-26:7).

Defendant 380 Second LLC is the owner of the building located at 380 Second Avenue, New York, New York.  (Kirby Decl., Ex. E, at p. 1).  It leases the Facility, which is a street level space, to Small Door, in which Small Door maintains a veterinary practice named Small Door Vet. (Kirby Decl., Ex. E).

---

[1] References to "Franco Dep." refer to the deposition transcript from the deposition of Plaintiff, which is attached to the accompanying Declaration of Sean J. Kirby, Esq., dated December 28, 2023 ("Kirby Decl.") as Exhibit D.

**B.     Plaintiff's Lone Visit to the Facility in Early 2022**

Plaintiff testified in her deposition that, even though she lives close to the Facility, she only went to the Facility on one occasion in early 2022, shortly after it opened, and has not been back since.  (Franco Dep. at pp. 29:4-30:20).  Specifically, in her lone visit to the Facility, she did not make an appointment but, instead, passed by the Facility on her way home and decided to stop in to get some information about the veterinary clinic.  (Franco Dep. at pp. 30:5-31:12).

During this lone visit, Plaintiff testified that she sat in front of the Facility looking at the people in reception and tried to get their attention, but the people merely stared at her.  (Franco Dep. at pp. 31:13-32:8).  Plaintiff eventually asked someone on the street to ask the people inside the Facility to come out to assist her.  (Franco Dep. at pp. 32:4-33:11).  The employees of Small Door did come outside to assist Plaintiff and set up a portable ramp that was maintained at the Facility to provide access to the Facility for wheelchair users due to the presence of one step at the front entrance.  (Franco Dep. at pp. 32:9-33:21; 37:15-22).  Plaintiff estimated that she was outside of the Facility for 20 minutes total from the time she arrived until the time she entered the Facility using the portable ramp.  (Franco Dep. at pp. 40:1-41:9).

Plaintiff further testified that, on her lone visit to the Facility, she was able to enter the Facility using the portable ramp without issue, and that she was able to ask questions and obtain the information she sought regarding the veterinary practice.  (Franco Dep. at pp. 33:18-34:16; 41:10-12).  One of the questions that Plaintiff asked was how to make an appointment and such information was provided to her.  (Franco Dep. at pp. 35:12-20).  Despite being provided with such information, Plaintiff has never made an appointment for veterinary service at the Facility in the nearly two years since her lone visit.  (Franco Dep. at pp. 35:21-25).

While inside the Facility, Plaintiff did not move around the interior of the Facility and, instead, remained near the front reception desk.  (Franco Dep. at pp. 34:17-22).  Specifically,

during her visit to the Facility, Plaintiff admits that she did not go in any of the exam rooms, and did not use the toilet room.  (Franco Dep. at pp. 34:23-35:4).  Plaintiff also admits that she was able to move around the lobby, near the front desk, without issue and that there were no barriers in the lobby that prevented her from moving her wheelchair freely.  (Franco Dep. at pp. 38:13-24; 50:11-18).

After asking her questions, Plaintiff left the Facility using the same portable ramp and she was able to exit the Facility without issue.  (Franco Dep. at pp. 51:6-13).  Since Plaintiff's lone visit in early 2022, Plaintiff admits that she has never once tried to go back to the Facility for veterinary care for her cat, and she has never made an appointment with Small Door Vet to have her pet cat seen at the Facility.  (Franco Dep. at pp. 30:5-8; 35:21-25; 38:8-12).

**C.**     **Plaintiff's Allegations of Inaccessible Features at the Facility**

Plaintiff's Complaint and the Accessibility Status Report, prepared by Plaintiff's Expert Jonathan White, AIA, NCARB, dated May 8, 2023 (the "White Report") assert that certain features, both inside and outside of the Facility, are not compliant with ADA accessibility standards.[2]  Specifically, Plaintiff and her expert witness have asserted that the following features are inaccessible:

(i) the entrance and exit of the Facility due to the presence of one step at the entrance (Compl. ¶¶ 20(I) – 20(V), 20(X); White Report §§ 1.1-1.6);

(ii) an interior ramp inside the Facility leading to certain exam rooms has too steep of a slope and the handrails on such interior ramp are not compliant with ADA standards (Compl. ¶¶ 20(VIII)-20(IX); White Report §§ 2.1-2.3);

---

[2] A true and correct copy of the White Report is attached to the Kirby Decl. as Exhibit F.  A true and correct copy of Plaintiff's Complaint is attached to the Kirby Decl. as Exhibit A.

(iii) the reception area lacks accessible seating and the coffee machine has operable parts reaching higher than 48 inches above finished floor ("a.f.f.") (Compl. ¶ 20(VI)-20(VII); White Report §§ 3.1-3.2);

(iv) the toilet room has a number of inaccessible features, such as a lack of braille signage, the door lock is not compliant with ADA standards and the force to open/close the door is 9 pounds, the mirror is too high, the sink lacks knee or toe clearance, the floor space is obstructed by a trash bin and the trash bin requires a foot pedal to open, the side wall grab bars are not in compliance with ADA standards, and the mounting of the paper towel dispenser is not compliant with ADA standards (White Report §§ 4.1-4.11); and

(v) the exam room "Irving" has a number of inaccessible features, such as a lack of braille signage, the force to open the door is 10 pounds, the sink is too high and lacks knee or toe clearance, and the exam table is not compliant with ADA standards. (White Report §§ 5.1-5.4).

### D. Defendants Have Remediated Any Inaccessible Features at the Facility or No Such Remediations Were Needed

Defendants have remediated all issues identified in the White report or the remediations detailed in such report were not necessary pursuant to applicable law.  Indeed, as set forth in the report of Defendants' expert Atilio Leveratto, dated June 9, 2023 (the "Leveratto Report"), and the Declaration of Atilio Leveratto, dated December 21, 2023 filed herewith (the "Leveratto Declaration"), the Facility is compliant with the requirements of the ADA.[3]

#### 1.   Entrance and Exit of the Facility

With respect to the accessible route and exterior access to the Facility, as detailed in Sections 1.1 through 1.6 of the Leveratto Report, a portable wheelchair ramp was previously provided by Defendants for accessing the Facility and appropriate signage regarding such ramp

---

[3] A true and correct copy of the Leveratto Report is attached to the Leveratto Decl. as Exhibit B.

was provided. (Leveratto Decl., Ex. B §§ 1.1 - 1.6). In addition, as testified by Plaintiff, she was able to utilize such portable ramp to access the Facility without issue during her one visit to the Facility. (Franco Dep. at pp. 33:18-34:24; 41:10-12).  Since the date the Leveratto Report was issued, Defendants have installed a fully compliant permanent wheelchair ramp and rail providing access to the Facility.  (Levaratto Decl. ¶¶ 8-15, Exs. C-G; Guttman Decl. ¶¶ 14-15).[4]

2.    Interior Ramp

With respect to the accessibility of the interior ramp in the Facility as detailed in Sections 2.1 through 2.3 of the Leveratto Report, Exam Room 1 is designated as the accessible exam room, and such exam room is on the same ground level as reception. (Leveratto Decl. ¶ 15, Ex. B §§ 2.1 – 2.3; Guttman Decl. ¶ 7).  Exam Room 1 provides the same services that are offered in any of the other exam rooms at the Facility.  (Guttman Decl. ¶ 8).  To enter this exam room, a client does not need to use the internal ramp or the handrails associated with such ramp and, therefore, the ramp would not be considered an accessible path to such exam room.  (Leveratto Decl. ¶ 15, Ex. B §§ 2.1 – 2.3; Guttman Decl. ¶ 7).

3.    Reception Area

In connection with the accessibility of certain features in the reception area of the Facility as detailed in Sections 3.1 through 3.2 of the Leveratto Report, such features have been remediated or are otherwise compliant with applicable accessibility standards.  (Leveratto Decl. ¶ 16, Ex. B §§ 3.1 – 3.2).  For instance, the controls of the coffee machine is within 48" a.f.f., and the bottle filler pictured in the White Report also shows touch controls at or below 48" a.f.f. (Leveratto Decl. ¶ 16(a), Ex. B § 3.1).  Likewise, with respect to the benches located in the reception area of the Facility, benches adhering to ADA 903.2 (one of the regulations cited in the White Report) are

_____

[4] References to "Guttman Decl." refer to the Declaration of Joshua Guttman, dated December 28, 2023, which is being filed in support of the Motion.

only required in sections 612 (Saunas and Steam Rooms), 803 (Dressing, Fitting, and Locker Rooms), and 807 (Holding Cells and Housing Cells) of the ADA Accessibility Standards. (Leveratto Decl. ¶ 16(b)).   Additionally, Defendants have provided a clear floor area to meet the requirement for 30"x 48" wheelchair clearance in the reception/waiting area.  (Leveratto Decl. ¶ 16(b)).

4.      Toilet Room

In connection with the accessibility of the toilet room in the Facility as detailed in Sections 4.1 through 4.11 of the Leveratto Report, since the Leveratto Report was issued, Small Door Vet has made its toilet room for employees only.  (Leveratto Decl. ¶ 17; Guttman Decl. ¶¶ 5-6).  As a result, the public no longer has access to the toilet room, and public access to the toilet room will not be provided in the future.  (Leveratto Decl. ¶ 17; Guttman Decl. ¶¶ 5-6).  Signage has also been placed on the toilet room door indicating that the toilet room is for employees only. (Leveratto Decl. ¶ 17).

5.      Exam Room

Finally, with respect to the accessibility of the exam rooms as detailed in Sections 5.1 through 5.4 of the Leveratto Report, such features have either been remediated or are otherwise compliant with applicable accessibility standards. (Leveratto Decl. ¶ 18).  For instance, since the Leveratto Report was issued, room signage (with raised characters and Braille) has been added to all rooms within the practice.  (Leveratto Decl. ¶ 18(a)).  Likewise, since the Leveratto Report was issued, Small Door Veterinary has adjusted the door hardware to meet a 5 lb. maximum push/pull. (Leveratto Decl. ¶ 18(b)).  Moreover, while the sinks in the exam rooms have not been modified, the sinks in all exam rooms are for employee use only as part of treatment procedures and are not accessible to the public.  (Leveratto Decl. ¶ 18(c); Guttman Decl. ¶¶ 9-10).  Small Door has never offered (and will never offer) members of the public access to use the sinks located in the exam

rooms in the Facility.  (Guttman Decl. ¶ 9).  The sinks in Small Door's exam rooms are for employee-use only, as part of the treatment procedures provided by Small Door's veterinary medical professionals.  (Guttman Decl. ¶ 10).  Finally, the tables in the exam rooms have not been modified.  (Leveratto Decl. ¶ 18(d)).  However, the exam tables in every exam room are fold-up/down and are in use based on the size of the animal being examined.  (Leveratto Decl. ¶ 18(d); Guttman Decl. ¶¶ 11-13).  These folding tables are for employee use only (i.e., not publicly accessible) and are used in treatment/examination of animals while the employee is in standing position. (Leveratto Decl. ¶ 18(d); Guttman Decl. ¶¶ 11-12).  In the folded down position, the exam tables are ADA compliant and not in the ADA circulation path as defined by ANSI A117.1-2009. (Leveratto Decl. ¶ 18(d)).  Small Door has never offered (and will never offer) members of the public access to use the exam tables located in the exam rooms in the Facility.  (Guttman Decl. ¶ 11).

### E.   Procedural History

On May 16, 2022, Plaintiff filed her Complaint in this Action, asserting claims against defendants for (i) Violations of the Americans with Disabilities Act (Count I), (ii) violations of the New York State Human Rights Law (Count II), (iii) violations of the New York City Human Rights Law (Count III), and (iv) Violations of the New York State Civil Rights Law (Count IV). (Kirby Decl., Ex. A).  On August 29, 2023, 380 Second filed its answer to Plaintiff's Complaint, generally denying Plaintiff's allegations, and asserting Cross Claims against Defendant Small Door Gramercy LLC asserting claims for, among other things, contractual indemnification.  (Kirby Decl., Ex. B).  On September 19, 2022, Small Door filed its Answer to 380 Second's Cross Claim. (Kirby Decl., Ex. C).[5]

---

[5] Additional facts appear in the argument section below.

## ARGUMENT

Under F.R.C.P. 56, "summary judgment is appropriate when the parties' submissions show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Garcia v. Barclays Capital, Inc.*, 281 F. Supp. 3d 365, 373 (S.D.N.Y. 2017) (internal quotations and citations omitted).   Courts consider a genuine dispute as to a material fact to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255.

The party opposing the motion for summary judgment may not rely on unsupported assertions, conjecture or surmise, and "must do more than simply show that there is some metaphysical doubt." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44, (2d Cir. 2015); *Centi v. Fedigan*, 413 F. Supp. 3d 171, 176, (S.D.N.Y. 2019) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.").   Accordingly, "conclusory allegations or speculation" are insufficient to defeat summary judgment, and "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467-68 (S.D.N.Y. 2011) (internal quotations and citations omitted).   "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

II.     **SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF 380 SECOND WITH RESPECT TO PLAINTIFF'S CLAIMS IN THE COMPLAINT**

As discussed above, Plaintiff has asserted four causes of action in her Complaint: (i) Violations of the Americans with Disabilities Act (Count I), (ii) violations of the New York State Human Rights Law (Count II), (iii) violations of the New York City Human Rights Law (Count III), and (iv) Violations of the New York State Civil Rights Law (Count IV).  (Kirby Decl., Ex. 1). Summary judgment should be granted in 380 Second's favor in connection with these claims.

A.     **Plaintiff's ADA Claim Should Be Dismissed Because She Lacks Standing to Assert Such a Claim**

Standing is an "irreducible constitutional minimum." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  To invoke the jurisdiction of the federal courts, "a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating [her] standing to sue at each stage of the litigation." *Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).

"To establish standing, a plaintiff must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (internal quotations and citations omitted). In the ADA context, in order to satisfy the first requirement, an injury in fact, the plaintiff must show "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location." *Calcano*, 36 F.4th at 74 (internal quotations and citations omitted).  Here, based on Plaintiff's deposition testimony, Plaintiff cannot satisfy the

first element of the standing analysis – that she suffered an injury in fact – because she cannot show an intent to return to the Facility.

Indeed, during her deposition, Plaintiff testified that, even though she lives close to the Facility, she only went to the Facility *on one occasion in early 2022 and has not been back since*. (Franco Dep. at pp. 29:4-30:20). Plaintiff further testified that, on that one occasion, she was able to access the Facility via the portable ramp maintained at the Facility and she did not encounter any other accessibility issues at the Facility that were detailed in her Complaint and in the White Report during this one visit, as she did not go into the exam rooms and did not go into the toilet room. (Franco Dep. at pp. 34:17-35:4). Plaintiff also admitted that she was able to move around the lobby, near the front desk, without issue and that there were no barriers in the lobby that prevented her from moving her wheelchair freely. (Franco Dep. at pp. 38:13-24; 50:11-18). Plaintiff also testified that, even though her cat needs to go to the veterinarian approximately every three months, in the nearly two years since her lone visit, Plaintiff has never once tried to go back to the Facility for veterinary care for her cat, and she has never made an appointment with Small Door Vet to have her pet cat seen at the Facility. (Franco Dep. at pp. 17:20-25; 23:13-25:6; 35:21-25). Finally, Plaintiff testified that she now takes her cat to First Avenue Vet for veterinary care, and that First Avenue Vet is also only a few blocks away from her apartment. (Franco Dep. at pp. 25:7-26:7).

In light of the foregoing deposition testimony, it is evident that Plaintiff did not suffer an injury in fact for standing purposes because (i) she was able to access the Facility during her one visit via the usage of the portable ramp, was able to obtain the information she sought, and did not otherwise encounter any accessibility barriers, (ii) as discussed below, given the remediation efforts undertaken by Defendants, it is unlikely that any alleged accessibility issues will persist in

the future, and (iii) Plaintiff cannot show an intent to return to the Facility because she only went there on one occasion, has never attempted to take her cat to the Facility for veterinary care, has never made an appointment with Small Door Vet for veterinary care, and already has a veterinarian for her cat which is located a few blocks from her apartment. *See, e.g.*, *Vogel v. Sym Props., LLC*, 2017 WL 4586348, at *4 (C.D.Cal. Aug. 4, 2017) ("Plaintiff fails to articulate a concrete plan to return to the Shopping Center. He merely states, 'I enjoy the Shopping Center's location as well as the shops and restaurants contained within it. I intend to return to the Facility.' Tracking Lujan, Plaintiff's statement is exactly the kind of 'mere profession of an intent' that the court deemed insufficient to establish standing. Plaintiff's deposition testimony provides equally vague statements of intent to return . . . . 'Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury' that is required to establish standing.") (internal quotations and citations omitted); *Taggart v. Colonial Hotel*, 2007 WL 9702259, at *3 (S.D. Fla. Oct. 29, 2007) (finding plaintiff's testimony insufficient for standing where plaintiff did not express "specific concrete plans concerning his return to the Defendant's establishment" and "[a]t best he makes his 'possible' return contingent upon a favorable ruling . . . and Defendant's compliance with the ADA . . . [h]e necessarily implies that he may not return at all, even if the Court rules in his favor"). Accordingly, since Plaintiff lacks standing to proceed with her ADA claim, summary judgment should be granted in 380 Second's favor and Plaintiff's ADA claim should be dismissed as a matter of law.

**B.      Plaintiff's ADA Claim Should Be Dismissed Because Her Claim Has Become Moot Due to Remediations Made to the Property or   Are   Otherwise   Moot Because No Such Remediations Are Required**

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable

interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013). "Mootness is a jurisdictional defect and deprives a court of the authority to adjudicate a case." *Scheiner v. ACT Inc.*, No. 10-CV-0096 RRM RER, 2013 WL 685445, at *2 (E.D.N.Y. Feb. 24, 2013) ("Mootness results when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur") (internal quotation and citations omitted). Because Title III of the ADA allows only for injunctive relief, not monetary damages, a claim under the ADA can become moot if a defendant remedies the access barrier during the pendency of the litigation. *See, e.g., Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015). To establish mootness, the defendant must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010). Here, each of the features that Plaintiff has identified in her Complaint or in the White Report have either been remediated or no such remediations are required. As such, Plaintiff's ADA claims have been mooted and should be dismissed.

### 1.    Entrance and Exit of the Facility

Plaintiff's Complaint and the White Report each assert that the entrance and exit of the Facility are not accessible due to the presence of one step at the entrance. (Compl. ¶¶ 20(I) – 20(V), 20(X); White Report §§ 1.1-1.6). While Defendants continue to maintain that the portable ramp was legally sufficient and provided effective access to the Facility (access which Plaintiff utilized on her lone visit), Defendants have mooted Plaintiff's claims with respect to the accessibility of the entrance and exit to the facility by installing a permanent ADA compliant ramp and rail. (Levaratto Decl. ¶¶ 8-15, Exs. C-G; Guttman Decl. ¶¶ 14-15). Accordingly, as a result of the installation of the permanent ramp, Plaintiff's claims with respect to the entrance and exit of the

-13-

Facility have been mooted. *See Hubbard v. 7-Eleven, Inc.*, 433 F.Supp. 2d 1134, at 1147 (S.D.Cal. 2006) (holding that because defendant installed a compliant ramp, the claim was remedied, and the claim was therefore moot).

2.    Interior Ramp

Plaintiff's Complaint and the White Report each assert that an interior ramp inside the Facility, which leads to certain exam rooms, has too steep of a slope and the handrails on such interior ramp are not compliant with ADA standards. (Compl. ¶¶ 20(VIII)-20(IX); White Report §§ 2.1-2.3). Plaintiff's Complaint and the White Report, however, fail to take into account the fact that Exam Room 1 is designated as the accessible exam room, and such exam room is on the same ground level as reception. (Leveratto Decl. ¶ 15, Ex. B §§ 2.1 – 2.3; Guttman Decl. ¶ 7). Exam Room 1 provides the same services that are offered in any of the other exam rooms at the Facility. (Guttman Decl. ¶ 8). To enter Exam Room 1, a client does not need to use the internal ramp or the handrails associated with such ramp and, therefore, the ramp would not be considered an accessible path. (Leveratto Decl. ¶ 15, Ex. B §§ 2.1 – 2.3; Guttman Decl. ¶ 7). Stated simply, since an accessible exam room is provided on the ground floor and the interior ramp is not needed to access such exam room, no modifications are needed on the interior ramp, thereby making Plaintiff's claims regarding the interior ramp moot. *See* https://www.ada.gov/resources/medical-care-mobility/ (guidance providing that not all exams rooms need to be accessible and, for smaller practices, one accessible exam room is sufficient).

3.    Reception Area

Plaintiff's next claim is that the reception area in the Facility (i) lacks accessible seating, and (ii) the coffee machine has operable parts reaching higher than 48" a.f.f. (Compl. ¶ 20(VI)-20(VII); White Report §§ 3.1-3.2). The allegations are without merit and Plaintiff's claims concerning such features are moot because such features have either been remediated or are

otherwise compliant with applicable accessibility standards.  (Leveratto Decl. ¶ 9, Ex. A §§ 3.1 – 3.2)

With respect to the coffee machine, the Leveratto Report details that the operable parts of the coffee machine are within 48" a.f.f., and the bottle filler pictured in the White Report also shows touch controls at/below 48" a.f.f. (Leveratto Decl. ¶ 16(a), Ex. B § 3.1).  As such, since both the touch controls for the coffee machine and bottle filler are each below 48" a.f.f., such features are compliant and no changes need to be made to such features, thereby making Plaintiff's claims moot.

Likewise, with respect to the benches located in the reception area of the Facility, benches adhering to ADA 903.2 (one of the statutes cited in the White Report) are only required in sections 612 (Saunas and Steam Rooms), 803 (Dressing, Fitting, and Locker Rooms), and 807 (Holding Cells and Housing Cells) of the ADA Accessibility Standards. (Leveratto Decl. ¶ 16(b)).  As such, the benches in the Facility do not need to be modified.  Nevertheless, Defendants have already provided a clear floor area to meet the requirement for 30"x 48" wheelchair clearance in the reception/waiting area.  (Leveratto Decl. ¶ 16(b)).  Accordingly, no additional modifications to the seating in the reception area are needed, thereby making Plaintiff's claims moot.

### 4.    Toilet Room

While Plaintiff admittedly did not use the toilet room during her one visit to the Facility, the White Report asserts that there are a number of features of the toilet room which do not comply with the requirements of the ADA, such as a lack of braille signage, the door lock is not compliant with ADA standards and the force to open/close the door is 9 pounds, the mirror is too high, the sink lacks knee or toe clearance, the floor space is obstructed by a trash bin, the trash bin requires a foot pedal to open, the side wall grab bars are not in compliance with ADA standards, and the

mounting of the paper towel dispenser is not compliant with ADA standards (White Report §§ 4.1-4.11).

Since the issuance of the White Report, Defendant Small Door has made its toilet room for employees only.  (Leveratto Decl. ¶ 17; Guttman Decl. ¶¶ 5-6).  As a result, the public no longer has access to the toilet room, and public access will not be provided in the future.  (Leveratto Decl. ¶ 17; Guttman Decl. ¶¶ 5-6).  Signage has also been placed on the toilet room door indicating that the toilet room is for employees only. (Leveratto Decl. ¶ 17).  This change has mooted Plaintiff's claims with respect to the bathroom at the Facility.

In "mixed-use" facilities, such as the Facility, "where only part of the facility is open to the public, the portion that is closed to the public is not a place of public accommodation and thus is not subject to Title III of the ADA." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008).  Indeed, "the exclusion of a disabled plaintiff from an employees-only restroom does not violate the ADA." *Doran,* 524 F.3d at 1048.  So, a restroom facility that is limited to "employees only" is not one that a plaintiff "'would likely encounter' upon further visits to the [b]uilding." *Kreisler v. Humane Soc'y of N.Y.*, 2018 WL 477891, at *7 (S.D.N.Y. 2018) (internal citations omitted).  Accordingly, in light of the fact that the toilet room at issue is no longer accessible to the public, Plaintiff's claims with respect to such toilet room are now moot.  *See Kreisler*, 2018 WL 477891, at *7 (finding claims regarding accessible features of a bathroom were moot because such bathroom was closed to the public and a restroom facility that is limited to "employees only" is not one that a plaintiff "'would likely encounter' upon further visits to the [b]uilding.").

5.    Exam Rooms

Finally, while Plaintiff testified that she did not go into the exam rooms during her one visit to the Facility in early 2022, the White Report asserts that the exam room "Irving" has a number of inaccessible features, such as a lack of braille signage, the force to open the door is 10

pounds, the sink is too high and lacks knee or toe clearance, and the exam table is not compliant with ADA standards. (White Report §§ 5.1-5.4). Such features have either been remediated or are otherwise compliant with applicable accessibility standards, thereby rendering Plaintiff's claims moot. (Leveratto Decl. ¶ 18).

For instance, since the Leveratto Report was issued, room signage (with raised characters and Braille) has been added to all rooms within the practice. (Leveratto Decl. ¶ 18(a)). Likewise, since the Leveratto Report was issued, Small Door Veterinary has adjusted the door hardware to meet a 5 lb. maximum push/pull. (Leveratto Decl. ¶ 18(b)). Given such remediation, Plaintiff's claims with respect to these features are now moot.

Moreover, while the sinks in the exam rooms have not been modified, the sinks in all exam rooms are for employee use only as part of treatment procedure and are not accessible to the public. (Leveratto Decl. ¶ 18(c); Guttman Decl. ¶¶ 9-10). Small Door has never offered (and will never offer) members of the public access to use the sinks located in the exam rooms in the Facility. (Guttman Decl. ¶ 9). As such, since the sinks in the exam room are not accessible to the public and are not for public use, Plaintiff's allegations regarding such sinks are moot. *See Kreisler*, 2018 WL 477891, at *7.

Finally, while the tables in the exam rooms have not been modified, the exam tables in every exam room are fold-up/down and are in use based on the size of the animal being examined. (Leveratto Decl. ¶ 18(d); Guttman Decl. ¶¶ 11-13). These folding tables are for employee use only (i.e., not publicly accessible) and are used in treatment/examination of animals (not people) while the employee is in standing position, thereby rendering such claims moot. (Leveratto Decl. ¶ 18(d)); Guttman Decl. ¶¶ 11-12; *see Kreisler*, 2018 WL 477891, at *7. Small Door has never offered (and will never offer) members of the public access to use the exam tables located in the

exam rooms in the Facility.  (Guttman Decl. ¶ 11).  Nevertheless, even if the exam tables were publicly accessible, which they are not, in the folded down position, the exam tables are ADA compliant and not in the ADA circulation path as defined by ANSI A117.1-2009.  (Leveratto Decl. ¶ 18(d)).

Accordingly, in light of the foregoing, since each of Plaintiff's allegations of alleged features that were non-compliant with the ADA have either been remediated or no such remediations are required, Plaintiff's ADA claims have been rendered moot and the Court should grant 380 Second's Motion with respect to such claims and dismiss Plaintiff's ADA claims.

### C.    Plaintiff's NYSHRL, NYCHRL, and Civil Rights Law Claims Should Likewise Be Dismissed

#### 1.    Plaintiff's NYSHRL Claim and New York Civil Rights Law Claim Should be Dismissed for the Same Reasons as Plaintiff's ADA Claim

It is well-established that "[a] claim for disability discrimination under NYSHRL and New York Civil Rights Law is governed by the same legal standards as the ADA."  *Ross v. Royal Pizza Cafe Corp.*, No. 17CV6294FBRML, 2018 WL 6313208, at *4 (E.D.N.Y. Aug. 1, 2018), report and recommendation adopted, No. 17CV6294FBRML, 2018 WL 6313182 (E.D.N.Y. Dec. 3, 2018).  As such, "[t]o the extent that [a plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim." *Range v. 535 Broadway Grp. LLC*, No. 17CV0423, 2019 WL 4182966, at *6 (S.D.N.Y. Sept. 3, 2019) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006)).

As set forth above, Plaintiff's ADA claims should be dismissed because Plaintiff lacks standing to maintain her claim, and her claim that certain inaccessible features exist at the Facility are moot.  (*See supra* at pp. 10-18).  Since Plaintiff's NYSHRL and Civil Rights Law claim must "survive or fail[] on the same basis" as the ADA claim, Plaintiff's NYSHRL and Civil Rights Law

should likewise be dismissed for the same reasons as her ADA claim.   *See, e.g., Range*, 2019 WL 4182966, at *6.

        2.       Plaintiff's NYCHRL Should be Dismissed Because Plaintiff Was Not Denied Access to the Facility

Under Section 8-107(4) of the NYCHRL, it is unlawful to deny an individual full and equal enjoyment, on equal terms and conditions, of accommodations or services based on that individual's disability. N.Y. City Admin Code §§ 8-107(4).  To succeed on a claim for denial of access to a public accommodation under Section 8-107(4), a "plaintiff must show (1) [she] is a member of a protected class as defined by the NYCHRL; (2) [defendant] directly or indirectly refused, withheld from, or denied an accommodation, advantage, facility, or privilege thereof based, in whole or in part, on [plaintiff's] membership in a protected group; and (3) [defendant] acted in such a manner and circumstances as to give rise to the inference that its actions constituted discrimination in violation of § 8-107 (4)." *Roberman v. Alamo Drafthouse Cinemas Holdings, LLC*, 67 Misc. 3d 182, 187 (Sup. Ct. Kings Cty. 2020) (internal citations and quotations omitted).

Where a plaintiff cannot show that the defendant failed to provide access to a public accommodation, a claim under Section 8-107(4) must fail.  *Roberman*, 67 Misc. 3d at 187.  While complete exclusion of a person with a disability from a public accommodation may be a violation of the NYCHRL, "[t]here is no case law to indicate that extended wait times for a public accommodation is a NYCHRL violation."  *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 263 (S.D.N.Y. 2018).  So, where there are no allegations that Plaintiff was entirely excluded from the Facility, Plaintiff's NYCHRL claim must fail as a matter of law.  *See, e.g., Lowell*, 352 F. Supp. 3d at 263.

Here, Plaintiff cannot satisfy the second required element for a claim under Section 8-107(4) because she has presented no evidence that she was denied access to the Facility.  Indeed, not only has Plaintiff failed to present evidence she was prevented from accessing the Facility, she

admits that Defendant's employees took steps to ensure that she gained access to the Facility by setting up a portable folding ramp.  (Franco Depo. at pp. 33:12-24).  Plaintiff also admits that, while she waited outside of the Facility for approximately 20 minutes before she was able to enter the Facility, she ultimately was able to enter the Facility via the portable ramp and was able to obtain the information that she sought. (Franco Dep. at pp. 32:9-34:16; 41:10-12).  While Plaintiff seems to contend that the time she spent waiting constitutes a denial of access, there is no case law to support that position.  *Lowell*, 352 F. Supp. 3d at 263.  Accordingly, since Plaintiff has admitted that she was able to access the Facility, she was not denied access under the NYCHRL and, therefore, her claim under the NYCHRL should be dismissed as a matter of law.

**D.      If Plaintiff's ADA Claim is Dismissed, Plaintiff's NYSHRL, NYCHRL, and Civil Rights Law Claims Should Be Dismissed Due to a Lack of Supplemental Jurisdiction**

Under 28 U.S.C. § 1367(a), district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Norman v. NYU Langone Health Sys.*, 492 F.Supp. 3d 154, 167 (S.D.N.Y. 2020).  However, it is well-settled that a federal court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).  "[D]oing so is particularly appropriate where … all federal-law claims are eliminated before trial." *Dominguez v. Banana Republic, LLC*, 613 F.Supp. 3d 759, 767 (S.D.N.Y. 2020) (internal citations and quotations omitted).

In cases asserting claims under the ADA as well as the NYSHRL and NYCHRL, courts routinely dismiss state law claims where the ADA claim is dismissed.  *See, e.g., Garnet v. Ramos Bros. Inc.*, No. 16 CV 2792 (RJD)(LB), 2017 WL 590323, at *1-3 (E.D.N.Y. Feb. 13, 2017) (dismissing ADA claim due to lack of standing and dismissing NYSHRL and NYCHRL claims

due to lack of supplemental jurisdiction because "[a] federal court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction"); *Norman*, 492 F.Supp. 3d at 168 (declining to exercise supplemental jurisdiction).

Here, subject matter jurisdiction in this matter is premised upon a federal question – the ADA.  (Complaint at ¶ 3).  In light of the well-established case law in this District and the Second Circuit, if the Court dismisses Plaintiff's ADA claim, but does not dismiss her state and city laws claims on the merits which, as set forth above, the Court should, Plaintiff's remaining NYSHRL, NYCHRL, and New York Civil Rights Law claims should be dismissed due to a lack of supplemental jurisdiction.

## III.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF 380 SECOND WITH RESPECT TO ITS INDEMNIFICATION CROSS CLAIM AGAINT SMALL DOOR

On November 5, 2021, Defendant and Small Door Veterinary entered into a lease (the "Lease") relating to the Facility, comprised of a portion of the ground floor retail space at the building located at 380 Second Avenue, New York, New York.  (Kirby Decl., Ex. E).  The Lease requires Small Door Veterinary to comply with all requirements relating to the ADA.  (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000009-11).   The Lease also requires Small Door Veterinary to defend, indemnify and hold harmless 380 Second from and against any all claims, demands, liability, loss, damage, costs and expenses (including reasonable attorneys' fees and disbursements) arising from or in connection with, among other things, any breach by Small Door in the performance of Small Door's obligations under the Lease.  (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000038-39).

Specifically, Article 45(c) of the Lease expressly requires that Small Door comply with all requirements relating to the ADA "pertaining to the interior of the demised premises, including for the design and construction of the access thereto and egress therefrom."  Article 45(c) further

provides that "[Small Door] shall comply with any reasonable plan adopted by [380 Second] which is designed to comply with ADA Requirements." Similarly, Article 94(d) of the Lease provides that "[380 Second] acknowledges and agrees that (i) ADA-compliant access to the Second Avenue entrance to the demised premises shall be provided in the form of a supplemental/removable ramp and (ii) the 22nd Street side door entrance to the demised premises will not be made ADA-accessible by [380 Second]." (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000009-11).

Finally, Article 82 of the Lease provides that "[Small Door] shall defend, indemnify and hold harmless [380 Second], its agents, officers, directors, shareholders, partners, members and principals . . . from and against any all claims, demands, liability, loss, damage, costs and expenses (including reasonable attorneys' fees and disbursements) arising from or in connection with: (a) any breach or default by [Small Door] in the full and prompt payment and performance of Tenant's obligations hereunder; (b) the use or occupancy or manner of use or occupancy of the demised premises by [Small Door] or any person claiming under or through [Small Door]; (c) any negligent or wrongful act or omission or negligence of [Small Door] or any Tenant Parties during the term hereof; . . . (e) the performance by Tenant of any alteration in the demised premises including, without limitation, Tenant's failure to obtain any permit, authorization, comprehensive insurance coverage or license or failure to pay in full any contractor, subcontractor or materialmen performing work on such alteration; . . . . If any claim, action or proceeding is brought against any of the Landlord Parties for a matter covered by this indemnity, [Small Door], upon notice from the indemnified person or entity, shall defend such claim, action or proceeding with counsel reasonably satisfactory to Landlord and the indemnified person or entity. This Article shall survive the expiration or sooner termination of this Lease." (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000038-39).

In light of the foregoing, pursuant to express the terms of the Lease, since Small Door is obligated to comply with all requirements of the ADA, and this Action was brought alleging violations of the ADA and related state and city laws, Small Door is obligated to defend, indemnify and hold 380 Second harmless in connection with the claims asserted by Plaintiff in the Action, including the reasonable attorneys' fees and disbursements incurred by 380 Second related thereto. As such, summary judgment should be granted with respect to 380 Second's contractual indemnification Cross Claim, and Small Door should be ordered to indemnify and hold 380 Second harmless in connection with the claims asserted by Plaintiff in the Action, including the reasonable attorneys' fees and disbursements incurred by 380 Second in defending such claims. *See, e.g., K.L.M.N.I, Inc. v. 483 Broadway Realty Corp.*, 987 N.Y.S.2d 316 (N.Y. App. Div. 2014) (holding that lease agreement entitled landlord to indemnification by tenant for violations of the ADA).

## CONCLUSION

For the reasons set forth above, this Court should grant 380 Second's Motion in all respects and provide such other and further relief, including attorneys' fees and costs, as this Court deems just and proper.

Dated: December 29, 2023
     New York, New York

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _/s/ Sean J. Kirby_
    Sean J. Kirby

30 Rockefeller Plaza
New York, New York 10112
*Attorneys for Defendant 380 Second LLC*