Case 1:22-cv-04011-AS-JW   Document 100   Filed 12/29/23   Page 1 of 11

Sean J. Kirby
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
skirby@sheppardmullin.com
*Attorneys for Defendant 380 Second LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                                              :
MILAGROS FRANCO,                                              :
                                                              :
        Plaintiff,                                        :
                                                              :
   v.                                                      : Civil Action No. 1:22-cv-04011-AS-JW
                                                              :
380 SECOND LLC AND SMALL DOOR                                 :
GRAMERCY LLC,                                                 :
                                                              :
        Defendants.                                       :
                                                              :
                                                              :
------------------------------------------------------------- x

## DEFENDANT 380 SECOND LLC'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56.1 of the Local Rules for the Eastern and Southern Districts of New York, Defendant 380 Second LLC ("380 Second") respectfully submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment (the "Motion") seeking summary judgment in favor of 380 Second on (i) each of Plaintiff Milagros Franco's claims under Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York State Civil Rights Law, and (ii) 380 Second's Cross Claim for contractual indemnification against Defendant Small Door Gramercy LLC ("Small Door"), and for such other and further relief as is just and proper.

A. **The Parties**

1. Plaintiff Milagros Franco resides in New York, New York, and uses a wheelchair to ambulate due to a medical condition. (Franco Dep. at pp. 4:8-13; 16:23-17:8).[1]

2. Plaintiff resides close to the Small Door Veterinary practice located at 380 Second Avenue, New York, New York (the "Facility"). (Franco Dep. at pp. 37:23-38:7).

3. Plaintiff has a pet cat and she takes her cat to the veterinarian approximately once every three months. (Franco Dep. at pp. 17:20-25; 23:13-25:6).

4. Plaintiff testified in her deposition that she currently takes her cat to a veterinary practice named First Avenue Vet, which is located approximately four to five blocks from her house. (Franco Dep. at pp. 25:7-26:7).

5. Defendant 380 Second is the owner of the building located at 380 Second Avenue, New York, New York. (Kirby Decl., Ex. E, at p. 1).

6. 380 Second leases the Facility, which is a street level space, to Small Door, in which Small Door maintains a veterinary practice named Small Door Vet. (Kirby Decl., Ex. E).

B. **Plaintiff's Lone Visit to the Facility in Early 2022**

7. Plaintiff testified in her deposition that, even though she lives close to the Facility, she only went to the Facility on one occasion in early 2022, shortly after it opened, and has not been back since. (Franco Dep. at pp. 29:4-30:20).

8. Specifically, in her lone visit to the Facility, she did not make an appointment but, instead, passed by the Facility on her way home and decided to stop in to get some information about the veterinary clinic. (Franco Dep. at pp. 30:5-31:12).

---

[1] References to "Franco Dep." refer to the deposition transcript from the deposition of Plaintiff, which is attached to the accompanying Declaration of Sean J. Kirby, Esq., dated December 28, 2023 ("Kirby Decl.") as Exhibit D.

9. During this lone visit, Plaintiff testified that she sat in front of the Facility looking at the people in reception and tried to get their attention, but the people merely stared at her. (Franco Dep. at pp. 31:13-32:8).

10. Plaintiff eventually asked someone on the street to ask the people inside the Facility to come out to assist her. (Franco Dep. at pp. 32:4-33:11).

11. The employees of Small Door did come outside to assist Plaintiff and set up a portable ramp that was maintained at the Facility to provide access to the Facility for wheelchair users due to the presence of one step at the front entrance. (Franco Dep. at pp. 32:9-33:21; 37:15-22).

12. Plaintiff estimated that she was outside of the Facility for 20 minutes total from the time she arrived until the time she entered the Facility using the portable ramp. (Franco Dep. at pp. 40:1-41:9).

13. Plaintiff further testified that, on her lone visit to the Facility, she was able to enter the Facility using the portable ramp without issue, and that she was able to ask questions and obtain the information she sought regarding the veterinary practice. (Franco Dep. at pp. 33:18-34:16; 41:10-12).

14. One of the questions that Plaintiff asked was how to make an appointment and such information was provided to her. (Franco Dep. at pp. 35:12-20).

15. Despite being provided with such information, Plaintiff has never made an appointment for veterinary service at the Facility in the nearly two years since her lone visit. (Franco Dep. at pp. 35:21-25).

16. While inside the Facility, Plaintiff did not move around the interior of the Facility and, instead, remained near the front reception desk. (Franco Dep. at pp. 34:17-22).

17. Specifically, during her visit to the Facility, Plaintiff admits that she did not go in any of the exam rooms, and did not use the toilet room. (Franco Dep. at pp. 34:23-35:4).

18. Plaintiff also admits that she was able to move around the lobby, near the front desk, without issue and that there were no barriers in the lobby that prevented her from moving her wheelchair freely. (Franco Dep. at pp. 38:13-24; 50:11-18).

19. After asking her questions, Plaintiff left the Facility using the same portable ramp and she was able to exit the Facility without issue. (Franco Dep. at pp. 51:6-13).

20. Since Plaintiff's lone visit in early 2022, Plaintiff admits that she has never once tried to go back to the Facility for veterinary care for her cat, and she has never made an appointment with Small Door Vet to have her pet cat seen at the Facility. (Franco Dep. at pp. 30:5-8; 35:21-25; 38:8-12).

C. **Plaintiff's Allegations of Inaccessible Features at the Facility**

21. Plaintiff's Complaint and the Accessibility Status Report, prepared by Plaintiff's Expert Jonathan White, AIA, NCARB, dated May 8, 2023 (the "White Report") assert that certain features, both inside and outside of the Facility, are not compliant with ADA accessibility standards. (Compl. ¶¶ 20(I) – 20(X); White Report at pp. 3-7).[2]

22. Plaintiff and/or her expert witness have asserted that the entrance and exit of the Facility are inaccessible due to the presence of one step at the entrance. (Compl. ¶¶ 20(I) – 20(V), 20(X); White Report §§ 1.1-1.6).[3]

23. Plaintiff and/or her expert witness have asserted that an interior ramp inside the Facility leading to certain exam rooms has too steep of a slope and the handrails on such interior

---

[2] A true and correct copy of the White Report is attached to the Kirby Decl. as Exhibit F.

[3] References to "Compl." refer to Plaintiff's Complaint in this action which is attached to the Kirby Decl. as Exhibit A.

ramp are not compliant with ADA standards. (Compl. ¶¶ 20(VIII)-20(IX); White Report §§ 2.1-2.3).

24.     Plaintiff and/or her expert witness have asserted that the reception area lacks accessible seating and the coffee machine has operable parts reaching higher than 48 inches above finished floor ("a.f.f."). (Compl. ¶ 20(VI)-20(VII); White Report §§ 3.1-3.2).

25.     Plaintiff's expert witness has asserted that the toilet room has a number of inaccessible features, such as a lack of braille signage, the door lock is not compliant with ADA standards and the force to open/close the door is 9 pounds, the mirror is too high, the sink lacks knee or toe clearance, the floor space is obstructed by a trash bin and the trash bin requires a foot pedal to open, the side wall grab bars are not in compliance with ADA standards, and the mounting of the paper towel dispenser is not compliant with ADA standards. (White Report §§ 4.1-4.11).

26.     Plaintiff's expert witness has asserted that the exam room "Irving" has a number of inaccessible features, such as a lack of braille signage, the force to open the door is 10 pounds, the sink is too high and lacks knee or toe clearance, and the exam table is not compliant with ADA standards. (White Report §§ 5.1-5.4).

**D.     Defendants Have Remediated Any Inaccessible Features at the Facility or No Such Remediations Were Needed**

27.     Defendants have remediated all issues identified in the White Report or the remediations detailed in such report were not necessary pursuant to applicable law. Indeed, as set forth in the report of Defendants' expert Atilio Leveratto, dated June 9, 2023 (the "Leveratto Report"), and the Declaration of Atilio Leveratto, dated December 21, 2023 filed herewith (the "Leveratto Decl."), the Facility is compliant with the requirements of the ADA.[4]

---

[4] A true and correct copy of the Leveratto Report is attached to the Leveratto Decl. as Exhibit B.

28. With respect to the accessible route and exterior access to the Facility, as detailed in Sections 1.1 through 1.6 of the Leveratto Report, a portable wheelchair ramp was previously provided by Defendants for accessing the Facility and appropriate signage regarding such ramp was provided. (Leveratto Decl., Ex. B §§ 1.1 - 1.6).

29. In addition, as testified by Plaintiff, she was able to utilize such portable ramp to access the Facility without issue during her one visit to the Facility. (Franco Dep. at pp. 33:18-34:24; 41:10-12).

30. Since the date the Leveratto Report was issued, Defendants have installed a fully compliant permanent wheelchair ramp and rail providing access to the Facility. (Levaratto Decl. ¶¶ 8-15, Exs. C-G; Guttman Decl. ¶¶ 14-15).[5]

31. With respect to the accessibility of the interior ramp in the Facility as detailed in Sections 2.1 through 2.3 of the Leveratto Report, Exam Room 1 is designated as the accessible exam room, and such exam room is on the same ground level as reception. (Leveratto Decl. ¶ 15, Ex. B §§ 2.1 – 2.3; Guttman Decl. ¶ 7).

32. Exam Room 1 provides the same services that are offered in any of the other exam rooms at the Facility. (Guttman Decl. ¶ 8)

33. To enter this exam room, a client does not need to use the internal ramp or the handrails associated with such ramp and, therefore, the ramp would not be considered an accessible path to such exam room. (Leveratto Decl. ¶ 15, Ex. B §§ 2.1 – 2.3; Guttman Decl. ¶ 7).

34. In connection with the accessibility of certain features in the reception area of the Facility as detailed in Sections 3.1 through 3.2 of the Leveratto Report, such features have been

---

[5] References to "Guttman Decl." refer to the Declaration of Joshua Guttman, dated December 28, 2023, which is being filed in support of 380 Second's Motion for Summary Judgment.

remediated or are otherwise compliant with applicable accessibility standards. (Leveratto Decl. ¶ 16, Ex. B §§ 3.1 – 3.2).

35. For instance, the controls of the coffee machine are within 48" a.f.f., and the bottle filler pictured in the White Report also shows touch controls at or below 48" a.f.f. (Leveratto Decl. ¶ 16(a), Ex. B § 3.1).

36. Likewise, with respect to the benches located in the reception area of the Facility, benches adhering to ADA 903.2 (one of the regulations cited in the White Report) are only required in sections 612 (Saunas and Steam Rooms), 803 (Dressing, Fitting, and Locker Rooms), and 807 (Holding Cells and Housing Cells) of the ADA Accessibility Standards. (Leveratto Decl. ¶ 16(b)).

37. Additionally, Defendants have provided a clear floor area to meet the requirement for 30"x 48" wheelchair clearance in the reception/waiting area. (Leveratto Decl. ¶ 16(b)).

38. In connection with the accessibility of the toilet room in the Facility as detailed in Sections 4.1 through 4.11 of the Leveratto Report, since the Leveratto Report was issued, Small Door Vet has made its toilet room for employees only. (Leveratto Decl. ¶ 17; Guttman Decl. ¶¶ 5-6).

39. As a result, the public no longer has access to the toilet room, and public access to the toilet room will not be provided in the future. (Leveratto Decl. ¶ 17; Guttman Decl. ¶¶ 5-6).

40. Signage has also been placed on the toilet room door indicating that the toilet room is for employees only. (Leveratto Decl. ¶ 17).

41. With respect to the accessibility of the exam rooms as detailed in Sections 5.1 through 5.4 of the Leveratto Report, such features have either been remediated or are otherwise compliant with applicable accessibility standards. (Leveratto Decl. ¶ 18).

42. For instance, since the Leveratto Report was issued, room signage (with raised characters and Braille) has been added to all rooms within the practice. (Leveratto Decl. ¶ 18(a)).

43. Likewise, since the Leveratto Report was issued, Small Door Veterinary has adjusted the door hardware to meet a 5 lb. maximum push/pull. (Leveratto Decl. ¶ 18(b)).

44. Moreover, while the sinks in the exam rooms have not been modified, the sinks in all exam rooms are for employee use only as part of treatment procedures and are not accessible to the public. (Leveratto Decl. ¶ 18(c); Guttman Decl. ¶¶ 9-10).

45. Small Door has never offered (and will never offer) members of the public access to use the sinks located in the exam rooms in the Facility. (Guttman Decl. ¶ 9).

46. The sinks in Small Door's exam rooms are for employee-use only, as part of the treatment procedures provided by Small Door's veterinary medical professionals. (Guttman Decl. ¶ 10).

47. While the tables in the exam rooms have not been modified, the exam tables in every exam room are fold-up/down and are in use based on the size of the animal being examined. (Leveratto Decl. ¶ 18(d); Guttman Decl. ¶¶ 11-13).

48. These folding tables are for employee use only (i.e., not publicly accessible) and are used in treatment/examination of animals while the employee is in standing position. (Leveratto Decl. ¶ 18(d); Guttman Decl. ¶¶ 11-12).

49. In the folded down position, the exam tables are ADA compliant and not in the ADA circulation path as defined by ANSI A117.1-2009. (Leveratto Decl. ¶ 18(d)).

50. Small Door has never offered (and will never offer) members of the public access to use the exam tables located in the exam rooms in the Facility. (Guttman Decl. ¶ 11).

E.  **Procedural History**

51.  On May 16, 2022, Plaintiff filed her Complaint in this Action, asserting claims against defendants for (i) Violations of the Americans with Disabilities Act (Count I), (ii) violations of the New York State Human Rights Law (Count II), (iii) violations of the New York City Human Rights Law (Count III), and (iv) Violations of the New York State Civil Rights Law (Count IV). (Kirby Decl., Ex. A).

52.  On August 29, 2023, 380 Second filed its answer to Plaintiff's Complaint, generally denying Plaintiff's allegations, and asserting Cross Claims against Defendant Small Door Gramercy LLC asserting claims for, among other things, contractual indemnification. (Kirby Decl., Ex. B).

53.  On September 19, 2022, Small Door filed its Answer to 380 Second's Cross Claim. (Kirby Decl., Ex. C).

F.  **The Lease**

54.  On November 5, 2021, Defendant and Small Door Veterinary entered into a lease (the "Lease") relating to the Facility, comprised of a portion of the ground floor retail space at the building located at 380 Second Avenue, New York, New York. (Kirby Decl., Ex. E).

55.  The Lease requires Small Door Veterinary to comply with all requirements relating to the ADA. (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000009-11).

56.  The Lease also requires Small Door Veterinary to defend, indemnify and hold harmless 380 Second from and against any all claims, demands, liability, loss, damage, costs and expenses (including reasonable attorneys' fees and disbursements) arising from or in connection with, among other things, any breach by Small Door in the performance of Small Door's obligations under the Lease. (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000038-39).

57. Specifically, Article 45(c) of the Lease expressly requires that Small Door comply with all requirements relating to the ADA "pertaining to the interior of the demised premises, including for the design and construction of the access thereto and egress therefrom." (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000010-11).

58. Article 45(c) further provides that "[Small Door] shall comply with any reasonable plan adopted by [380 Second] which is designed to comply with ADA Requirements." (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000010-11).

59. Similarly, Article 94(d) of the Lease provides that "[380 Second] acknowledges and agrees that (i) ADA-compliant access to the Second Avenue entrance to the demised premises shall be provided in the form of a supplemental/removable ramp and (ii) the 22nd Street side door entrance to the demised premises will not be made ADA-accessible by [380 Second]." (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000046).

60. Finally, Article 82 of the Lease provides that "[Small Door] shall defend, indemnify and hold harmless [380 Second], its agents, officers, directors, shareholders, partners, members and principals . . . from and against any all claims, demands, liability, loss, damage, costs and expenses (including reasonable attorneys' fees and disbursements) arising from or in connection with: (a) any breach or default by [Small Door] in the full and prompt payment and performance of Tenant's obligations hereunder; (b) the use or occupancy or manner of use or occupancy of the demised premises by [Small Door] or any person claiming under or through [Small Door]; (c) any negligent or wrongful act or omission or negligence of [Small Door] or any Tenant Parties during the term hereof; . . . (e) the performance by Tenant of any alteration in the demised premises including, without limitation, Tenant's failure to obtain any permit, authorization, comprehensive insurance coverage or license or failure to pay in full any contractor, subcontractor or materialmen

performing work on such alteration; . . . . If any claim, action or proceeding is brought against any of the Landlord Parties for a matter covered by this indemnity, [Small Door], upon notice from the indemnified person or entity, shall defend such claim, action or proceeding with counsel reasonably satisfactory to Landlord and the indemnified person or entity.  This Article shall survive the expiration or sooner termination of this Lease."  (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000038-39).

Dated: New York, New York
       December 29, 2023

Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By:   */s/ Sean J. Kirby*
       Sean J. Kirby

30 Rockefeller Plaza
New York, New York  10112
Tel.:  (212) 653-8700
Fax:  (212) 653-8701
skirby@sheppardmullin.com
*Attorneys for 380 Second LLC*