UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
:
MILAGROS FRANCO, :
:
              Plaintiff, : Civil Action No. 1:22-cv-04011-AS-JW
:
   v. :
: **PLAINTIFF'S RESPONSE TO**
380 SECOND LLC AND SMALL DOOR : **DEFENDANT 380 SECOND LLC's**
GRAMERCY LLC, : **LOCAL RULE 56.1 STATEMENT OF**
: **UNDISPUTED MATERIAL FACTS**
             Defendants. :
:
:
:
-------------------------------------------------------------- x

     Pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff submits the following response to Defendant 380 Second LLC's ("380 Second", or the "Defendant") Statement of Undisputed Material Facts ("R. 56.1 Statement").

**PLAINTIFF'S RESPONSES TO 380 SECOND'S RULE 56.1 STATEMENT**

     1.     Plaintiff Milagros Franco resides in New York, New York, and uses a wheelchair to ambulate due to a medical condition. (Franco Dep. at pp. 4:8-13; 16:23-17:8).[1]

     **Response: Admit.**

     2.     Plaintiff resides close to the Small Door Veterinary practice located at 380 Second Avenue, New York, New York (the "Facility"). (Franco Dep. at pp. 37:23-38:7).

     **Response: Admit. Plaintiff testified that she resides around the corner from the Facility. Franco Dep. at p 38:2-6**

---

[1] References to "Franco Dep." refer to the deposition transcript from the deposition of Plaintiff, which is attached to the accompanying Declaration of Sean J. Kirby, Esq., dated December 28, 2023 ("Kirby Decl.") as Exhibit D.

3. Plaintiff has a pet cat and she takes her cat to the veterinarian approximately once every three months. (Franco Dep. at pp. 17:20-25; 23:13-25:6).

**Response: Admit.**

4. Defendant 380 Second is the owner of the building located at 380 Second Avenue, New York, New York. (Kirby Decl., Ex. E, at p. 1).

**Response: Admit.**

5. 380 Second leases the Facility, which is a street level space, to Small Door, in which Small Door maintains a veterinary practice named Small Door Vet. (Kirby Decl., Ex. E).

**Response: Admit that 380 leases the Facility to Small Door. The cited evidence describes the Facility as a "ground floor retail space". Kirby Decl., Ex. E, at p. 1**

6. Plaintiff testified in her deposition that, even though she lives close to the Facility, she only went to the Facility on one occasion in early 2022, shortly after it opened, and has not been back since. (Franco Dep. at pp. 29:4-30:20).

**Response: Admit that plaintiff lives close to the facility and has only entered the Facility once. Deny that "she has not been back since" as unclear and not supported by the evidence cited. See Franco Tr. at pp. 28:23-29:3, 29:12-15, 55:6-10 (Plaintiff testified that the Facility is "on her way home" and that the "one time" she visited she did so because she previously "saw the construction" of the Facility and "the doors were finally opened, so I [she] wanted to find out" about becoming a customer of the Facility); Franco Dep. at p. 29:12-15 (Plaintiff testified that she goes by the Facility in her daily life, as it is on the route she takes to her home); Franco Dep. at p. 55:6-10 (Plaintiff testified that she was deterred from attempting to enter the Facility due to her experience the one time she accessed the Facility)  Ms. Franco also stated that she**

**passes by Small Door on a weekly basis. (Milagros Franco Declaration ("Franco Dec.") at ¶ 7).**

7. Specifically, in her lone visit to the Facility, she did not make an appointment but, instead, passed by the Facility on her way home and decided to stop in to get some information about the veterinary clinic. (Franco Dep. at pp. 30:5-31:12).

**Response: Admit that plaintiff entered the Facility once and did not make an appointment. Deny the remaining statements. See Franco Tr. at pp. 28:23-29:3, 29:12-15, 55:6-10 (Plaintiff testified that she did not have an appointment when she visited the facility on her way home, as she visited to get information about the veterinary clinic "find out" about becoming a customer of the veterinary clinic and because she "wanted to find a close vet" for her cat); see also Franco Tr. at 64-65; Franco Dec. at ¶ 6-12 (plaintiff stated that she did not set up an appointment because of the difficulty and frustration she had accessing the premises).**

8. During this lone visit, Plaintiff testified that she sat in front of the Facility looking at the people in reception and tried to get their attention, but the people merely stared at her. (Franco Dep. at pp. 31:13-32:8).

**Response: Admit.**

9. Plaintiff eventually asked someone on the street to ask the people inside the Facility to come out to assist her. (Franco Dep. at pp. 32:4-33:11).

**Response: Admit.**

10. The employees of Small Door did come outside to assist Plaintiff and set up a portable ramp that was maintained at the Facility to provide access to the Facility for wheelchair

users due to the presence of one step at the front entrance.  (Franco Dep. at pp. 32:9-33:21; 37:15-22).

**Response: Admit the portion of the above paragraph that states "[t]he employees of Small Door did come outside to assist Plaintiff and set up a portable ramp". Plaintiff stated that the employees were the two people behind the reception desk. Franco Dep. at p. 39:14- 17.  Deny the remainder of the paragraph as not supported by the cited evidence.**

11.     Plaintiff estimated that she was outside of the Facility for 20 minutes total from the time she arrived until the time she entered the Facility using the portable ramp.  (Franco Dep. at pp. 40:1-41:9).

**Response: Admit.**

12.     Plaintiff further testified that, on her lone visit to the Facility, she was able to enter the Facility using the portable ramp without issue, and that she was able to ask questions and obtain the information she sought regarding the veterinary practice.  (Franco Dep. at pp. 33:18-34:16; 41:10-12).

**Response: Admit that plaintiff entered the Facility once.  Deny the rest of the paragraph, specifically, that she entered "without issue" as not supported by the evidence and a legal conclusion.  It took 20 minutes to enter the Facility with help from a passer-by.  (Franco Tr. at pp. 40:1-41:9; 31-31; 47:21-24; 54:8-9; 55:6-10 ); see also Franco Tr. at 64-65; Milagros Franco Declaration at ¶ 6, 12 (plaintiff stated that she did not set up an appointment because of the difficulty and frustration she had accessing the premises).**

13. One of the questions that Plaintiff asked was how to make an appointment and such information was provided to her. (Franco Dep. at pp. 35:12-20).

**Response: Admit.**

14. Despite being provided with such information, Plaintiff has never made an appointment for veterinary service at the Facility in the nearly two years since her lone visit. (Franco Dep. at pp. 35:21-25).

**Response: Admit.**

15. While inside the Facility, Plaintiff did not move around the interior of the Facility and, instead, remained near the front reception desk. (Franco Dep. at pp. 34:17-22).

**Response: Admit.**

16. Specifically, during her visit to the Facility, Plaintiff admits that she did not go in any of the exam rooms, and did not use the toilet room. (Franco Dep. at pp. 34:23-35:4).

**Response: Admit.**

17. Plaintiff also admits that she was able to move around the lobby, near the front desk, without issue and that there were no barriers in the lobby that prevented her from moving her wheelchair freely. (Franco Dep. at pp. 38:13-24; 50:11-18).

> **Response: Admit that plaintiff moved around the lobby in her wheelchair. Deny the statement "without issue" and there "were no barriers" as not supported by the cited evidence.**

18. After asking her questions, Plaintiff left the Facility using the same portable ramp and she was able to exit the Facility without issue. (Franco Dep. at pp. 51:6-13).

> **Response: Admit that Plaintiff exited the Facility. Deny the statement "without issue" as not supported by the cited evidence.**

19. Since Plaintiff's lone visit in early 2022, Plaintiff admits that she has never once tried to go back to the Facility for veterinary care for her cat, and she has never made an

appointment with Small Door Vet to have her pet cat seen at the Facility. (Franco Dep. at pp. 30:5-8; 35:21-25; 38:8-12).

**Response: Admit that plaintiff has not made an appointment with Small Door Vet. Deny the phrase "tried to go back" as unclear and not supported by the evidence. Plaintiff did not set up an appointment because of the difficulty and frustration she had accessing the Facility. Franco Tr. at 64-65; Franco Declaration at ¶ 6 - 12.**

20. Plaintiff's Complaint and the Accessibility Status Report, prepared by Plaintiff's Expert Jonathan White, AIA, NCARB, dated May 8, 2023 (the "White Report") assert that certain features, both inside and outside of the Facility, are not compliant with ADA accessibility standards. (Compl. ¶¶ 20(I) – 20(X); White Report at pp. 3-7).[2]

**Response: Admit.**

21. Plaintiff and/or her expert witness have asserted that the entrance and exit of the Facility are inaccessible due to the presence of one step at the entrance. (Compl. ¶¶ 20(I) – 20(V), 20(X); White Report §§ 1.1-1.6).[3]

**Response: Admit.**

22. Plaintiff and/or her expert witness have asserted that an interior ramp inside the Facility leading to certain exam rooms has too steep of a slope and the handrails on such interior ramp are not compliant with ADA standards. (Compl. ¶¶ 20(VIII)-20(IX); White Report §§ 2.1-2.3).

**Response: Admit.**

---

[2] A true and correct copy of the White Report is attached to the Kirby Decl. as Exhibit F.

[3] References to "Compl." refer to Plaintiff's Complaint in this action which is attached to the Kirby Decl. as Exhibit A.

23. Plaintiff and/or her expert witness have asserted that the reception area lacks accessible seating and the coffee machine has operable parts reaching higher than 48 inches above finished floor ("a.f.f."). (Compl. ¶ 20(VI)-20(VII); White Report §§ 3.1-3.2).

**Response: Admit.**

24. Plaintiff's expert witness has asserted that the toilet room has a number of inaccessible features, such as a lack of braille signage, the door lock is not compliant with ADA standards and the force to open/close the door is 9 pounds, the mirror is too high, the sink lacks knee or toe clearance, the floor space is obstructed by a trash bin and the trash bin requires a foot pedal to open, the side wall grab bars are not in compliance with ADA standards, and the mounting of the paper towel dispenser is not compliant with ADA standards. (White Report §§ 4.1-4.11).

**Response: Admit.**

25. Plaintiff's expert witness has asserted that the exam room "Irving" has a number of inaccessible features, such as a lack of braille signage, the force to open the door is 10 pounds, the sink is too high and lacks knee or toe clearance, and the exam table is not compliant with ADA standards. (White Report §§ 5.1-5.4).

**Response: Admit.**

26. Defendants have remediated all issues identified in the White Report or the remediations detailed in such report were not necessary pursuant to applicable law. Indeed, as set forth in the report of Defendants' expert Atilio Leveratto, dated June 9, 2023 (the "Leveratto Report"), and the Declaration of Atilio Leveratto, dated December 21, 2023 filed herewith (the "Leveratto Decl."), the Facility is compliant with the requirements of the ADA. [4]

---

[4] A true and correct copy of the Leveratto Report is attached to the Leveratto Decl. as Exhibit B.

> **Response: Deny.** The assertions are not supported by the evidence cited. Plaintiff's expert, Jonathan White, has stated in a declaration filed herewith ("White Dec.") that he examined the drawings and information in the Declaration of Atilio Leveratto (ECF 99). Specifically, Mr. White examined the architectural drawing submitted for the permanent ramp at Small Door ("Drawing"), pursuant to which the ramp was constructed. (ECF 99-4). The Drawing, according to Mr. White, does not resolve item 1.5 from the White Report which states: "[t]he door maneuvering clearance on the push side of the [entrance] door [of Small Door] has a level change of 1-inch, sloped at 9.2% measured perpendicular to the door." (White Dec. ¶ 8). The Drawing shows no changes being made to the to the push side of the entrance door of Small Door, so the slope remains at 9.2%. (White Dec. ¶ 11). Section 404.2.4.4 of the 2010 ADA Standards for Accessible Design does not permit a slope of 9.2%. Section 4.13.6 of the 1991 ADA Standards for Accessible Design does not permit a slope of 9.2%. ("The floor or ground area within the required clearances shall be level and clear.") (White Dec. ¶¶ 9-10).

27. With respect to the accessible route and exterior access to the Facility, as detailed in Sections 1.1 through 1.6 of the Leveratto Report, a portable wheelchair ramp was previously provided by Defendants for accessing the Facility and appropriate signage regarding such ramp was provided. (Leveratto Decl., Ex. B §§ 1.1 - 1.6).

> **Response: Admit** that a portable ramp was provided at some time to enter the Facility. **Deny** the remainder of paragraph as not supported by the evidence cited, specifically that this was an "accessible" route as this is a legal conclusion and not supported by fact or law.

28. In addition, as testified by Plaintiff, she was able to utilize such portable ramp to access the Facility without issue during her one visit to the Facility. (Franco Dep. at pp. 33:18-34:24; 41:10-12).

**Response:  Admit that plaintiff entered the Facility.  Deny the remainder of the paragraph as not supported by the evidence cited.  Specifically that she entered "without issue" is not supported by the evidence and a legal conclusion.  It took 20 minutes to enter the Facility with help from a passer-by.  (Franco Tr. at pp. 40:1-41:9; 31-31; 47:21-24; 54:8-9; 55:6-10 ); see also Franco Tr. at 64-65; Milagros Franco Declaration at ¶ 6, 12 (plaintiff stated that she did not set up an appointment because of the difficulty and frustration she had accessing the premises).**

29. Since the date the Leveratto Report was issued, Defendants have installed a fully compliant permanent wheelchair ramp and rail providing access to the Facility.  (Levaratto Decl. ¶¶ 8-15, Exs. C-G; Guttman Decl. ¶¶ 14-15).[5]

**Response: Deny.  This paragraph is not supported by the evidence cited.  Plaintiff denies this legal conclusion and requests that it is disregarded.  *See e.g. Olin Corporation v. Lamorak Insurance Company*, 332 F.Supp.3d 818, 839 (S.D.N.Y. 2018) (disregarding legal arguments in a 56.1 statement).  Additionally, Experts may testify as to facts, but not as to law.  *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at \*9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the**

---

[5] References to "Guttman Decl." refer to the Declaration of Joshua Guttman, dated December 28, 2023, which is being filed in support of 380 Second's Motion for Summary Judgment.

**approval of local or state code officials who are not empowered to interpret the 2010 ADA Standards.");** *see also Small v. Dellis*, **1997 WL 853515, at \*4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).**

30. With respect to the accessibility of the interior ramp in the Facility as detailed in Sections 2.1 through 2.3 of the Leveratto Report, Exam Room 1 is designated as the accessible exam room, and such exam room is on the same ground level as reception. (Leveratto Decl. ¶ 15, Ex. B §§ 2.1 – 2.3; Guttman Decl. ¶ 7).

**Response: Deny. This paragraph is not supported by the evidence cited. Plaintiff denies this legal conclusion and requests that it is disregarded.** *See e.g. Olin Corporation v. Lamorak Insurance Company*, **332 F.Supp.3d 818, 839 (S.D.N.Y. 2018) (disregarding legal arguments in a 56.1 statement). Additionally, Experts may testify as to facts, but not as to law.** *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, **No. 17-4328, 2021 WL 1979501, at \*9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA Standards.");** *see also Small v. Dellis*, **1997 WL 853515, at \*4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).**

31. Exam Room 1 provides the same services that are offered in any of the other exam rooms at the Facility. (Guttman Decl. ¶ 8)

**Response: Admit that is what the declaration states.**

32. To enter this exam room, a client does not need to use the internal ramp or the handrails associated with such ramp and, therefore, the ramp would not be considered an accessible path to such exam room. (Leveratto Decl. ¶ 15, Ex. B §§ 2.1 – 2.3; Guttman Decl. ¶ 7).

**Response: Deny. This is an improper legal conclusion. Plaintiff denies this legal conclusion and requests that it is disregarded. *See e.g. Olin Corporation v. Lamorak Insurance Company*, 332 F.Supp.3d 818, 839 (S.D.N.Y. 2018) (disregarding legal arguments in a 56.1 statement). Additionally, Experts may testify as to facts, but not as to law. *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at \*9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA Standards."); *see also Small v. Dellis*, 1997 WL 853515, at \*4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).**

33. In connection with the accessibility of certain features in the reception area of the Facility as detailed in Sections 3.1 through 3.2 of the Leveratto Report, such features have been remediated or are otherwise compliant with applicable accessibility standards. (Leveratto Decl. ¶ 16, Ex. B §§ 3.1 – 3.2).

**Response: Deny. This is an improper legal conclusion. Plaintiff denies this legal conclusion and requests that it is disregarded. *See e.g. Olin Corporation v. Lamorak Insurance Company*, 332 F.Supp.3d 818, 839 (S.D.N.Y. 2018) (disregarding legal arguments in a 56.1 statement). Additionally, Experts may testify as to facts, but not**

**as to law.** *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at *9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA Standards."); *see also Small v. Dellis*, 1997 WL 853515, at *4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).

34. For instance, the controls of the coffee machine are within 48" a.f.f., and the bottle filler pictured in the White Report also shows touch controls at or below 48" a.f.f. (Leveratto Decl. ¶ 16(a), Ex. B § 3.1).

**Response: Admit that this is what the declaration states.**

35. Likewise, with respect to the benches located in the reception area of the Facility, benches adhering to ADA 903.2 (one of the regulations cited in the White Report) are only required in sections 612 (Saunas and Steam Rooms), 803 (Dressing, Fitting, and Locker Rooms), and 807 (Holding Cells and Housing Cells) of the ADA Accessibility Standards. (Leveratto Decl. ¶ 16(b)).

**Response: Admit that this is what the declaration states.**

36. Additionally, Defendants have provided a clear floor area to meet the requirement for 30"x 48" wheelchair clearance in the reception/waiting area. (Leveratto Decl. ¶ 16(b)).

**Response: Admit that this is what the declaration states.**

37. In connection with the accessibility of the toilet room in the Facility as detailed in Sections 4.1 through 4.11 of the Leveratto Report, since the Leveratto Report was issued, Small

Door Vet has made its toilet room for employees only.  (Leveratto Decl. ¶ 17; Guttman Decl. ¶¶ 5-6).

**Response:  Deny as not supported by the evidence cited.  This evidence does not support the "accessibility of the toilet room in the Facility."  The bathroom was available to the public prior to the Complaint being filed and during this litigation, according to Small Door, the bathroom was public, "customer facing" and portions of it had been renovated prior to and after Small Door's opening.  (Guttman Tr. 43:18:25, 44:1: 14; attached as Ex. C to Smith Dec.).**

38. As a result, the public no longer has access to the toilet room, and public access to the toilet room will not be provided in the future. (Leveratto Decl. ¶ 17; Guttman Decl. ¶¶ 5-6).

**Response: Deny as not supported by the evidence cited.   The bathroom was available to the public prior to the Complaint being filed and during this litigation, according to Small Door, the bathroom was public, "customer facing" and portions of it had been renovated prior to and after Small Door's opening.  (Guttman Tr. 43:18:25, 44:1: 14; attached as Ex. C to Smith Dec.).**

39. Signage has also been placed on the toilet room door indicating that the toilet room is for employees only. (Leveratto Decl. ¶ 17).

**Response:  Admit that this is what the declaration states.**

40. With respect to the accessibility of the exam rooms as detailed in Sections 5.1 through 5.4 of the Leveratto Report, such features have either been remediated or are otherwise compliant with applicable accessibility standards. (Leveratto Decl. ¶ 18).

**Response: Deny.  This is an improper legal conclusion.  Plaintiff denies this legal conclusion and requests that it is disregarded.  *See e.g. Olin Corporation v. Lamorak***

*Insurance Company*, 332 F.Supp.3d 818, 839 (S.D.N.Y. 2018) (disregarding legal arguments in a 56.1 statement). Additionally, Experts may testify as to facts, but not as to law. *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at *9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA standards."); *see also Small v. Dellis*, 1997 WL 853515, at *4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).

41. For instance, since the Leveratto Report was issued, room signage (with raised characters and Braille) has been added to all rooms within the practice. (Leveratto Decl. ¶ 18(a)).

**Response: Admit that this is what the declaration states.**

42. Likewise, since the Leveratto Report was issued, Small Door Veterinary has adjusted the door hardware to meet a 5 lb. maximum push/pull. (Leveratto Decl. ¶ 18(b)).

**Response: Admit that this is what the declaration states.**

43. Moreover, while the sinks in the exam rooms have not been modified, the sinks in all exam rooms are for employee use only as part of treatment procedures and are not accessible to the public. (Leveratto Decl. ¶ 18(c); Guttman Decl. ¶¶ 9-10).

**Response: Admit that this is what the declarations state.**

44. Small Door has never offered (and will never offer) members of the public access to use the sinks located in the exam rooms in the Facility. (Guttman Decl. ¶ 9).

**Response: Admit that this is what the declaration states.**

45. The sinks in Small Door's exam rooms are for employee-use only, as part of the treatment procedures provided by Small Door's veterinary medical professionals. (Guttman Decl. ¶ 10).

**Response: Admit that this is what the declaration states.**

46. While the tables in the exam rooms have not been modified, the exam tables in every exam room are fold-up/down and are in use based on the size of the animal being examined. (Leveratto Decl. ¶ 18(d); Guttman Decl. ¶¶ 11-13).

**Response: Admit that this is what the declarations state.**

47. These folding tables are for employee use only (i.e., not publicly accessible) and are used in treatment/examination of animals while the employee is in standing position. (Leveratto Decl. ¶ 18(d); Guttman Decl. ¶¶ 11-12).

**Response: Admit that this is what the declaration states.**

48. In the folded down position, the exam tables are ADA compliant and not in the ADA circulation path as defined by ANSI A117.1-2009. (Leveratto Decl. ¶ 18(d)).

**Response: Admit that is what the declaration states. Deny the portion that states this is "ADA compliant" as an improper legal conclusion made by an expert. Experts may testify as to facts, but not as to law. *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at \*9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA standards."); *see also Small v. Dellis*, 1997 WL 853515, at \*4 (D. Md. Dec.**

**18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).**

49. Small Door has never offered (and will never offer) members of the public access to use the exam tables located in the exam rooms in the Facility. (Guttman Decl. ¶ 11).

**Response: Admit that this is what the declaration states.**

50. On May 16, 2022, Plaintiff filed her Complaint in this Action, asserting claims against defendants for (i) Violations of the Americans with Disabilities Act (Count I), (ii) violations of the New York State Human Rights Law (Count II), (iii) violations of the New York City Human Rights Law (Count III), and (iv) Violations of the New York State Civil Rights Law (Count IV). (Kirby Decl., Ex. A).

**Response: Admit.**

51. On August 29, 2023, 380 Second filed its answer to Plaintiff's Complaint, generally denying Plaintiff's allegations, and asserting Cross Claims against Defendant Small Door Gramercy LLC asserting claims for, among other things, contractual indemnification. (Kirby Decl., Ex. B).

**Response: Admit that this is what the documents state.**

52. On September 19, 2022, Small Door filed its Answer to 380 Second's Cross Claim. (Kirby Decl., Ex. C).

**Response: Admit.**

53. On November 5, 2021, Defendant and Small Door Veterinary entered into a lease (the "Lease") relating to the Facility, comprised of a portion of the ground floor retail space at the building located at 380 Second Avenue, New York, New York. (Kirby Decl., Ex. E).

**Response: Admit that this is what the declaration states.**

54. The Lease requires Small Door Veterinary to comply with all requirements relating to the ADA. (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000009-11).

**Response: Admit that this is what the document states.**

55. The Lease also requires Small Door Veterinary to defend, indemnify and hold harmless 380 Second from and against any all claims, demands, liability, loss, damage, costs and expenses (including reasonable attorneys' fees and disbursements) arising from or in connection with, among other things, any breach by Small Door in the performance of Small Door's obligations under the Lease. (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000038-39).

**Response: Admit that this is what the document states.**

56. Specifically, Article 45(c) of the Lease expressly requires that Small Door comply with all requirements relating to the ADA "pertaining to the interior of the demised premises, including for the design and construction of the access thereto and egress therefrom." (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000010-11).

**Response: Admit that this is what the document states.**

57. Article 45(c) further provides that "[Small Door] shall comply with any reasonable plan adopted by [380 Second] which is designed to comply with ADA Requirements." (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000010-11).

**Response: Admit that this is what the document states.**

58. Similarly, Article 94(d) of the Lease provides that "[380 Second] acknowledges and agrees that (i) ADA-compliant access to the Second Avenue entrance to the demised premises shall be provided in the form of a supplemental/removable ramp and (ii) the 22nd Street side door entrance to the demised premises will not be made ADA-accessible by [380 Second]." (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000046).

**Response: Admit that this is what the document states.**

59. Finally, Article 82 of the Lease provides that "[Small Door] shall defend, indemnify and hold harmless [380 Second], its agents, officers, directors, shareholders, partners, members and principals . . . from and against any all claims, demands, liability, loss, damage, costs and expenses (including reasonable attorneys' fees and disbursements) arising from or in connection with: (a) any breach or default by [Small Door] in the full and prompt payment and performance of Tenant's obligations hereunder; (b) the use or occupancy or manner of use or occupancy of the demised premises by [Small Door] or any person claiming under or through [Small Door]; (c) any negligent or wrongful act or omission or negligence of [Small Door] or any Tenant Parties during the term hereof; . . .  (e) the performance by Tenant of any alteration in the demised premises including, without limitation, Tenant's failure to obtain any permit, authorization, comprehensive insurance coverage or license or failure to pay in full any contractor, subcontractor or materialmen performing work on such alteration; . . . . If any claim, action or proceeding is brought against any of the Landlord Parties for a matter covered by this indemnity, [Small Door], upon notice from the indemnified person or entity, shall defend such claim, action or proceeding with counsel reasonably satisfactory to Landlord and the indemnified person or entity.  This Article shall survive the expiration or sooner termination of this Lease."  (Kirby Decl., Ex. E at Bates Nos. 380SECOND0000038-39).

**Response: Admit that this is what the document states.**

Dated: February 5, 2024

                                               Respectfully submitted,

                                               **SMITH LEGAL ADVISORS LLC**

                                               By:  /s  
                                                    Susan K. Smith, Esq.  
                                                    Attorneys for Plaintiff  
                                                    40 Worth Street, Suite 602

       New York, New York 10013
       Telephone: (920)689-3315
       Email: sksmith@smithlegaladvisors.com

**PARKER HANSKI LLC**

By: /s
       Robert G. Hanski, Esq.
       Adam S. Hanski, Esq.
       Attorneys for Plaintiff
       40 Worth Street, Suite 602
       New York, New York 10013
       Telephone: (212) 248-7400
       Facsimile: (212) 248-5600
       Email: rgh@parkerhanski.com