UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MILAGROS FRANCO,

                                       Plaintiff,

        -against-

380 SECOND LLC, AND SMALL DOOR
GRAMERCY LLC

                                    Defendants.
----------------------------------------------------------------x

Docket No. 1: 22-cv-04011

**PLAINTIFF'S RESPONSE TO DEFENDANT SMALL DOOR GRAMERCY LLC's LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

      Pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff submits the following response to Defendant Small Door Gramercy LLC's ("Small Door", or the "Defendant") Statement of Undisputed Material Facts ("R. 56.1 Statement").

      As a threshold matter, Small Door's R. 56.1 Statement violates Local Rule 56.1(a). Small Door's Rule 56.1 Statement is replete with unsubstantiated opinions, arguments, and legal conclusions, which are not proper items for a 56.1 Statement. *Wagner v. Jamieson*, 2022 WL 4586301, at *1 (E.D.N.Y. 2022) (a "[c]ourt does not consider arguments and legal conclusions contained in the parties' 56.1 statements.") citing *Rodriguez v. Schneider*, 1999 WL 459813, at *1 n.3 (S.D.N.Y.1999).

**PLAINTIFF'S RESPONSES TO SMALL DOOR'S RULE 56.1 STATEMENT**

      1.      On May 15, 2022, Plaintiff Milagros Franco (the "Plaintiff") – a self-proclaimed "tester"[1] – filed the Complaint [Dckt. No. 1] (the "Complaint", or the "*Compl.*") alleging violations

---

[1] As of the date of this filing, Plaintiff has filed a combined total of twenty (20) lawsuits in the Southern and Eastern Districts of New York, and in the Supreme Courts of the State of New York. [*See* Mizrahi Decl. at ¶ 8] [Ex. F]. In nearly all of these cases, Plaintiff is represented by same law firm – Parker Hanski LLC. [*Id*.].

1

of Title III of 42 U.S.C. 12181, *et seq*. (the "ADA"), the New York State Executive Law § 296, *et seq*. (the "NYSHRL"), the Administrative Code of the City of New York § 8-107, *et seq*. (the "NYC Code"), and the New York State Civil Rights Law ("NYSCRL"). [*See* Mizrahi Decl. at ¶ 3] [Ex. A].[2]

> **Response: Admit that portion of the above paragraph that cites the Complaint (ECF No. 1). Deny the remainder of the assertions in the above paragraph as immaterial and irrelevant and not supported by the evidence cited.**

2. Plaintiff alleges that she is disabled as defined by the ADA and "uses a wheelchair for mobility." [*Id.*] [Ex. A at ¶¶ 6, 31].

> **Response: Admit.**

3. Plaintiff does not allege whether she can ambulate without a wheelchair, or whether she is completely wheelchair-bound. [*Id.*].

> **Response: Deny as the assertion in the above paragraph is immaterial and irrelevant and is not supported by the evidence cited.**

4. According to the Complaint, in an unspecified year, on an unspecified date, at an unspecified time, Plaintiff attempted to access the veterinary practice, located at 380 2nd Ave., New York, NY 10010 (the "Subject Premises"), operated by Small Door, as tenant, and owned by co-Defendant 380 Second LLC ("380 Second", or the "Landlord Defendant"), as landlord. [*Id.*] [Ex. A at ¶ 16].

> **Response: Admit that plaintiff attempted to access the premises owned by the Defendants. The rest of the paragraph is denied as not supported by the evidence.**

---

[2] The "Mizrahi Decl." refers to the Declaration of Jason Mizrahi, Esq., and the exhibits annexed thereto, filed simultaneously herewith.

**Plaintiff Milagros Franco Transcript ("Franco Tr." at Ex. B of Susan K. Smith Declaration) at 28:23-25; 29:2-23; 30:5-20. Small Door testified that the Subject Premises first opened for business in April 2022. Transcript of Joshua Guttman (the "Guttman Tr.") Smith Decl. Ex. C at 38:7-16.**

5. The Complaint identifies three (3) categories of alleged barriers in the Subject Premises: (i) an inaccessible entrance / egress[3]; (ii) inaccessible interior circulation paths[4]; and (iii) an inaccessible reception area.[5] [*Id.*] [Ex. A at ¶ 20].

**Response: Deny. The Complaint identifies more than three (3) categories of alleged barriers at the Subject Premises. ECF No. 1 ¶ 20, I-X.**

6. The Complaint does not specify whether Plaintiff encountered these alleged barriers personally, or whether they were encountered by an unidentified third-party. [*Id.*].

**Response: Deny as not supported by the cited evidence, and as immaterial and irrelevant. The Complaint states, "Plaintiff attempted to and desired to access the Small Door Veterinary premises." ECF No. 1 at ¶16.**

7. In its operative answer to the Complaint, Small Door denied all of Plaintiff's material allegations, and interposed affirmative defenses on the basis that, *inter alia*: (i) Plaintiff failed to state a claim upon which relief may be granted; and (ii) Plaintiff lacks standing to sue. [*Id.* at ¶ 4] [Ex. B at pp. 1-30].

**Response: Admit that Small Door filed an answer and that the document speaks for itself.**

---

[3] [*Id.*] [Ex. A at ¶ 20 (I) – (V), (X)].
[4] [*Id.*] [Ex. A at ¶ 20 (VIII) – (IX)].
[5] [*Id.*] [Ex. A at ¶ 20 (VI) – (VII)].

8. Small Door, as tenant, entered into a commercial lease with 380 Second, as landlord for the first floor of the Subject Premises, in or around November 5, 2021. [*Id.* at ¶ 5] [Ex. C]; [*see also* Guttman Decl. at ¶ 3].[6]

**Response:  Admit.**

9. Small Door operates a veterinary practice within the Subject Premises. [*See* Mizrahi Decl. at ¶ 5] [Ex. C]; [*see also* Guttman Decl. at ¶ 4].

**Response: Admit.**

10. Plaintiff has lived at 319 East 21st St., Apt. 2C, New York, NY 10010 for the last fifteen (15) years. [*Id.* at ¶ 6] [Ex. D at 4:11-13, 14:17-21].

**Response: Admit.**

11. Plaintiff has only visited the Subject Premises on one (1) occasion, on an unspecified date in 2022. [*Id.* at ¶ 6] [Ex. D at 29:16, 30:5-8].

**Response:  Admit plaintiff has entered the subject premises one time.**

12. On the one (1) occasion where Plaintiff did visit the Subject Premises, Plaintiff successfully accessed the Subject Premises via a portable ramp. [*Id.* at ¶ 6] [Ex. D at 33: 22-24].

**Response: Admit that plaintiff accessed the subject premises one time.  Deny that the Subject Premises was "successfully accessed" as the term is undefined, misleading and a legal conclusion and not supported by the cited evidence.**

13. On the one (1) occasion where Plaintiff did visit the Subject Premises, Plaintiff did ambulate past the reception area. [*Id.* at ¶ 6] [Ex. D at 34: 17-25, 35:2-4, 38:13-24, 50:11-23 – 51:2-5].

---

[6] The "Guttman Decl." refers to the Declaration of Joshua Guttman, filed simultaneously herewith.

**Response: Admit that Plaintiff accessed the Subject Premises one time. Deny the remainder of Paragraph 13 as unsupported by the cited evidence. Franco Tr. at 34:17-25; 35:2-4; 38:13-20; 50-51 (plaintiff testified that she "stay[ed] just up toward the front desk" the one time she accessed the Subject Premises and did not "go back to the exam rooms", Mizrahi Dec. Ex. D at 34: 17-25, she did not go into the restroom, *Id.*, Ex. D at 35: 2-4).**

14. While Plaintiff was in the reception area of the Subject Premises, she was able to ambulate without obstruction. [*Id.* at ¶ 6] [Ex. D at 50: 11-14].

**Response: Deny as misleading and unsupported by the cited evidence. Franco Tr. at 50:11-14 (Plaintiff testified that she was "able to go from -- move from the [entrance] door to the reception desk without obstruction").**

15. Plaintiff did not encounter any accessibility issues in the Subject Premises': (i) interior circulation paths; (ii) restroom; or (iii) exam rooms. [*Id.* at ¶ 6] [Ex. D at 34: 17-25, 35:2-4, 38:13-24, 50:11-23 – 51:2-5].

**Response: Deny as misleading and unsupported by the cited record. Franco Tr. at 38:12-20; 49:20-25 and 50:2; 50:11-23 and 51:2 (Plaintiff testified that the one time she was able to enter the Subject Premises she did not travel past the reception/front desk.)**

16. Plaintiff has owned a pet calico cat for the last three (3) years. [*Id.* at ¶ 6] [Ex. D at 23:13-25 – 24:2-14].

**Response: Admit.**

17. Since she has owned her pet cat, Plaintiff takes her cat to the veterinarian approximately once every three (3) months. [*Id.* at ¶ 6] [Ex. D at 24:12-25 – 25:2-6].

5

**Response: Admit.**

18. On the one (1) occasion where Plaintiff did visit the Subject Premises, Plaintiff did not attempt to book an appointment for her cat. [*Id.* at ¶ 6] [Ex. D at 35:12-25].

> **Response: Admit. Franco Tr. at 64-65; Milagros Franco Declaration at ¶¶ 6-12 (plaintiff stated that she did not set up an appointment because of the difficulty and frustration she had accessing the premises).**

19. Plaintiff has not returned to the Subject Premises since her one – and only visit, in 2022. [*Id.* at ¶ 6] [Ex. D at 38:8-12].

> **Response: Deny as unclear. Plaintiff passes by the subject premises frequently. Franco Dec. ¶ 7**.

20. Plaintiff does not have any concrete plans to return to the Subject Premises in the future. [*Id.* at ¶ 6] [Ex. D at 35: 21-25, 38:8-12].

> **Response: Deny as unsupported by the cited evidence. Plaintiff stated that she desired to utilize Small Door's services but did not set up an appointment because of the difficulty and frustration she had accessing the premises. Franco Tr. at 64-65; Franco Dec. at ¶¶ 6, 12.**

21. Plaintiff has never attempted to make an appointment with Small Door Vet to book veterinary services for her calico cat. [*Id.*]. Plaintiff does not keep a record of the businesses she has sued for ADA violations. [*Id.* at ¶ 6] [Ex. D at 29:25 – 30:2-4; 56: 17-25 – 57: 2-14; 62: 7-11].

> **Response: Admit the first sentence. Franco Tr. at 64-65; Milagros Franco Declaration at ¶ 6, 12 (plaintiff stated that she did not set up an appointment because of the difficulty and frustration she had accessing the premises). Deny the second sentence as unsupported by the cited evidence.**

22. Plaintiff patronizes First Avenue Vet – a veterinary clinic located a few blocks away from her apartment. [*Id.* at ¶ 6] [Ex. D at 25: 7-20, 26:3-7; 28:13-22].

**Response: Admit .**

23. On April 19, 2023, at approximately 10:30 a.m., Plaintiff's Fed.R.Civ.P. 26(a)(2) expert witness, Jonathan White ("Mr. White"), conducted an inspection of the following five (5) elements of the Subject Premises:

    i. the entrance / egress[7];
    ii. the interior circulation paths [8];
    iii. the reception area[9];
    iv. the restroom; and
    v. the exam room.

[*Id.* at ¶ 7] [Ex. E at p. 1].

**Response: Admit that on April 19 2023, Plaintiff's expert witness, Jonathan White, conducted an inspection of the Subject Premises. Deny the rest of the statement as not supported by the cited evidence. Plaintiff's Expert Witness conducted an inspection of the entire Subject Premises.**

24. On May 8, 2023, Mr. White published his findings in a 17-page page report (the "White Report"). [*Id.*].

**Response: Admit.**

25. The White Report concluded that, as of April 19, 2023, five (5) categories of alleged barriers existed at the Subject Premises, *to wit*: (i) an inaccessible entrance / egress[10]; (ii)

---

[7] [*Id.*] [Ex. A at ¶ 20 (I) – (V), (X)].
[8] [*Id.*] [Ex. A at ¶ 20 (VIII) – (IX)].
[9] [*Id.*] [Ex. A at ¶ 20 (VI) – (VII)].
[10] [*Id.*] [Ex. E at §§ 1.1 – 1.6].

inaccessible interior circulation paths [11]; (iii) an inaccessible reception area[12]; (iv) an inaccessible restroom[13]; and (v) an inaccessible exam room[14]. [*Id.*].

**Response: Admit the portion of Paragraph 25 which asserts that the conclusions contained in the White Report are "as of April 19, 2023". Deny the portion of Paragraph 25 that describes Plaintiff's expert findings as covering "five categories of alleged barriers", as unsupported by the evidence. Plaintiff's Expert Witness report, the White Report has findings that cover multiple areas, spaces, and the architectural elements of the Subject Premises. See Jonathan White Declaration ("White Dec."), Exhibit B.**

26. Leveratto Architecture Group LLC ("Leveratto") is an architectural firm founded in 2021 by Atilio Leveratto, a NCARB Certified architect, licensed in New York, California and New Jersey. [*See* Leveratto Decl. at ¶ 1] [Ex. A].[15]

**Response: Admit that is what the document states.**

27. Defendants retained Leveratto to conduct an on-site survey of the interior and exterior of the Subject Premises, and to undertake and record measurements of the Subject Premises' façade and sidewalk. [*Id.* at ¶ 3].

**Response: Admit that is what the document states.**

28. Leveratto was further retained to proactively recommend proposals for removing architectural barriers that allegedly exist at the Subject Premises, so as to satisfy the requirements prescribed by the 2010 ADA Standards for Accessible Design. [*Id.* at ¶ 4].

---

[11] [*Id.*] [Ex. E. at §§ 2.1 – 2.3].
[12] [*Id.*] [Ex. E. at §§ 3.1 – 3.2].
[13] [*Id.*] [Ex. E. at §§ 4.1 – 4.11].
[14] [*Id.*] [Ex. E. at §§ 5.1 – 5.4].
[15] The "Leveratto Decl." refers to the Declaration of Atilio Leveratto, and the exhibits annexed thereto, filed simultaneously herewith.

**Response: Admit that is what the document states.**

29. The purpose of Leveratto's on-site survey was to peer-review the White Report, and to survey the components of the Subject Premises the White Report alleges do not meet the technical specifications published by the Department of Justice in the ADA Standards for Accessible Design. [*Id.* at ¶ 5].

**Response: Admit that is what the document states.**

30. Leveratto conducted an on-site survey of the Subject Premises on June 9, 2023, and published its findings in a six (6) page report (the "Leveratto Report"). [*Id.* at ¶ 6] [Ex. B].

**Response: Admit that is what the document states.**

31. Leveratto's findings, in response to the five (5)[16] categories of alleged barriers in the Subject Premises identified in the White Report, are summarized below. [*See Id.* at ¶ 7].

**Response: Deny at this paragraph makes no sense and is not supported by the cited evidence.**

32. According to the Leveratto Report, as of June 9, 2023, Small Door had already applied for a construction permit for the installation of a permanent ramp. [*See Id.* at ¶ 8].

**Response: Deny as this is not supported by the cited evidence.**

33. According to the NYC Department of Buildings ("DOB") filing summary for job number M00880139-I1, on or around May 24, 2023, Leveratto, on behalf of Small Door, had applied for a construction permit for the installation of a permanent ramp. [*See Id.* at ¶ 9] [Ex. C].

**Response. Admit that is what the declaration states.**

34. The May 24, 2023 permit was accompanied by a set of architectural drawings, prepared, signed and sealed by Leveratto. [*See Id.* at ¶ 10] [Ex. D].

---

[16] *To wit,* the: (i) inaccessible entrance / egress; (ii) inaccessible interior circulation paths; (iii) inaccessible reception area; (iv) inaccessible restroom; and (v) inaccessible exam room.

**Response: Admit that is what the declaration states in paragraph 10.**

35. According to the NYC DOB filing summary for job number M00880139-S1, on or around May 31, 2023, Leveratto, on behalf of Small Door, had applied for a permit to relocate the existing siamese sprinkler fire department connection ("FDC"). [*See Id.* at ¶ 11] [Ex. E].

**Response. Admit that is what the declaration states.**

36. The May 31, 2023 permit was accompanied by a set of architectural drawings, prepared, signed and sealed by Leveratto. [*See Id.* at ¶ 12] [Ex. F].

**Response: Admit that is what the declaration states.**

37. On or around the week of October 2, 2023, Small Door started construction of the permanent ramp, and relocation of the siamese FDC. [*See* Guttman Decl. at ¶ 14].

**Response: Admit that is what the declaration states.**

38. On or around October 24, 2023, Small Door completed construction of the permanent ramp, and relocation of the siamese FDC. [*See Id.* at ¶ 15].

**Response: Admit that is what the declaration states**

39. On or around October 24, 2023, the NYC DOB completed and signed off on the construction of the permanent ramp, and on the relocation of the siamese FDC. [*See* Leveratto Decl. at ¶¶ 13, 14] [Ex. G].

**Response: Admit that is what the declaration states**

40. The construction of the permanent ramp remediated the first category of alleged barriers identified in the White Report. [*See Id.* at ¶ 7].

**Response: Deny. This statement is not supported by the cited evidence. Plaintiff denies this legal conclusion and requests that it is disregarded.** *See e.g. Olin Corporation v. Lamorak Insurance Company*, **332 F.Supp.3d 818, 839 (S.D.N.Y. 2018)**

10

> (disregarding legal arguments in a 56.1 statement). Additionally, Experts may testify as to facts, but not as to law. *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at *9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA Standards."); *see also Small v. Dellis*, 1997 WL 853515, at *4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).

41. The second alleged category of barriers identified in the White Report (*i.e.,* the interior circulation paths) does not require remediations. [*See Id.* at ¶ 15].

> **Response: Deny.** This statement is not supported by the cited evidence. Plaintiff denies this legal conclusion and requests that it is disregarded. *See e.g. Olin Corporation v. Lamorak Insurance Company*, 332 F.Supp.3d 818, 839 (S.D.N.Y. 2018) (disregarding legal arguments in a 56.1 statement). Additionally, Experts may testify as to facts, but not as to law. *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at *9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA Standards."); *see also Small v. Dellis*, 1997 WL 853515, at *4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th

Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).

42. Specifically, the interior circulation paths identified in the White Report lead to multiple exam rooms. [*See Id.*].

**Response: Deny. This is not supported by the cited evidence.**

43. However, Small Door has an exam room designated for wheelchair-bound patrons, located on the same ground floor level of the Subject Premises, adjacent to the reception area ("Exam Room 1"). [*See Id.*]; [*see also* Guttman Decl. at ¶ 5].

**Response: Admit that is what the documents state.**

44. Exam Room 1 was designed with the requisite dimensions under the 2010 ADA. [*See* Leveratto Decl. at ¶ 16]; [*see also* Guttman Decl. at ¶ 6].

**Response: Deny. This is not supported by the cited evidence.**

45. Exam Room 1 provides the same services that are offered in any of the other exam rooms at the Subject Premises. [*Id.*].

**Response: Deny. This is not supported by the cited evidence.**

46. This feature obviates the need for a wheelchair-bound patron to utilize the interior circulation paths identified in the White Report. [*See* Leveratto Decl. at ¶ 16].

**Response: Deny. This is not supported by the cited evidence and does not make sense.**

47. The third alleged category of barriers identified in the White Report does not require remediations. [*See Id.* at ¶ 16].

**Response: Deny. This is not supported by the cited evidence. Plaintiff denies this legal conclusion and requests that it is disregarded. *See e.g. Olin Corporation v. Lamorak Insurance Company*, 332 F.Supp.3d 818, 839 (S.D.N.Y. 2018) (disregarding**

**legal arguments in a 56.1 statement). Additionally, Experts may testify as to facts, but not as to law.** *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, **No. 17-4328, 2021 WL 1979501, at \*9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA Standards.");** *see also Small v. Dellis*, **1997 WL 853515, at \*4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance)**

48. First, with respect to the coffee machine identified in § 3.1 of the White Report, this item is located at or below the required 48 inches above finished floor ("FAA"). [*See Id.* at ¶ 16(a)].

**Response: Admit that is what the declaration states.**

49. Second, with respect to the three (3) built-in benches in the reception area, benches adhering to § 903.2 of the 2010 ADA are only required in § 612 ("Saunas and Steam Rooms"), § 803 ("Dressing, Fitting, and Locker Rooms"), and § 807 ("Holding Cells and Housing Cells"). [*See Id.* at ¶ 16(b)].

**Response:  Admit that is what the declaration states.**

50. In addition, the ground space of the reception area meets the requirements of § 305.3 of the 2010 ADA (providing for 30" x 48" wheelchair clearance). [*See Id.*].

**Response:  Deny as this is not what the declaration states.**

51. The fourth alleged category of barriers identified in the White Report does not require remediations. [*See Id.* at ¶ 17].

13

**Response: Deny. This is not supported by the cited evidence. Plaintiff denies this legal conclusion and requests that it is disregarded. *See e.g. Olin Corporation v. Lamorak Insurance Company*, 332 F.Supp.3d 818, 839 (S.D.N.Y. 2018) (disregarding legal arguments in a 56.1 statement). Additionally, Experts may testify as to facts, but not as to law. *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at \*9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA Standards."); *see also Small v. Dellis*, 1997 WL 853515, at \*4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).**

52. As of the date of this filing, Small Door no longer offers members of the public access to the restroom. [*See Id.*]; [*see also* Guttman Decl. at ¶ 7].

**Response: Deny as unsupported by the evidence cited. Leveratto Decl. at ¶¶ 3-5. (Leveratto was "retained to conduct an on-site survey of the interior and exterior of the "Subject Premises", "to undertake and record measurements of the Facility's façade and sidewalk", and to "proactively recommend proposals for removing architectural barriers".) In addition, the assertion in Paragraph 52 is not supported by the cited evidence, Guttman Decl. at ¶ 7. The bathroom was available to the public prior to the Complaint being filed and during this litigation, according to Small Door, the bathroom was public, "customer facing" and portions of it had been renovated**

**prior to and after Small Door's opening. (Guttman Tr. 43:18:25, 44:1: 14; attached as Ex. C to Smith Dec.).**

53. Small Door will not offer members of the public access to the restroom in the future. [*See* Guttman Decl. at ¶ 8].

**Response: Deny as not supported by the cited evidence.**

54. The fifth (and final) alleged category of barriers identified in the White Report has been remediated, to the maximum extent required under the 2010 ADA. [*see* Leveratto Decl. at ¶ 18].

**Response: Deny. This is not supported by the cited evidence. Plaintiff denies this legal conclusion and requests that it is disregarded. *See e.g. Olin Corporation v. Lamorak Insurance Company*, 332 F.Supp.3d 818, 839 (S.D.N.Y. 2018) (disregarding legal arguments in a 56.1 statement). Additionally, Experts may testify as to facts, but not as to law. *See S.F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at \*9 (E.D. Pa. May 18, 2021) ("The parties' consultants have expressed opinions as to whether the District's design complies with the 2010 ADA Standards. However, the court cannot defer to such opinions, nor can it rely on the approval of local or state code officials who are not empowered to interpret the 2010 ADA Standards."); *see also Small v. Dellis*, 1997 WL 853515, at \*4 (D. Md. Dec. 18, 1997), aff'd, 211 F.3d 1265, 2000 WL 472873 (4th Cir. 2000) (noting that experts in ADA cases are allowed to give measurements, but not opine on compliance).**

55. As of the date of this filing, signage (with raised characters and braille) has been installed in every room within the Subject Premises, pursuant to § 216 and § 703 of the 2010 ADA. [*See Id.* at ¶ 20(a)].

**Response: Deny as unsupported by the evidence cited.**

56. As of the date of this filing, door hardware has been adjusted to meet a five (5) lb. maximum push / pull force, pursuant to § 404.2.9 of the 2010 ADA. [*See Id.* at ¶ 18(b)].

**Response: Admit that this is what the declaration states.**

57. With respect to the sink identified in § 5.3 of the White Report, Small Door has never offered (and will never offer) members of the public access to use the sinks located in the exam rooms. [*See Id.* at ¶ 18(c)]; [*see also* Guttman Decl. at ¶ 9].

**Response: Admit that this is what the declarations state.**

58. The sinks in Small Door's exam rooms are for employee-use only, as part of the treatment procedures provided by Small Door's veterinary medical professionals. [*See* Leveratto Decl. at ¶ 18(c)]; [*see also* Guttman Decl. at ¶ 10].

**Response: Admit that this is what the declarations state.**

59. With respect to the exam tables identified in § 5.4 of the White Report, Small Door has never offered (and will never offer) members of the public access to use the exam tables located in the exam rooms. [*See* Leveratto Decl. at ¶ 18(d)]; [*see also* Guttman Decl. at ¶ 11].

**Response: Admit that this is what the declarations state.**

60. The exam tables in Small Door's exam rooms are for employee-use only, as part of the treatment procedures provided by Small Door's veterinary medical professionals. [*See* Leveratto Decl. at ¶ 18(d)]; [*see also* Guttman Decl. at ¶ 12].

**Response: Admit that this is what the declarations state.**

61. Moreover, the exam tables in Small Door's exam rooms are foldable / retractable, and are adjusted based on the size of the animal being examined. [*See* Leveratto Decl. at ¶ 18(d)]; [*see also* Guttman Decl. at ¶ 13].

**Response: Admit that this is what the declarations state.**

62. When the exam tables are in the fold-down position, the exam tables satisfy the protrusion limits required by § 307.2 of the 2010 ADA. [*See* Leveratto Decl. at ¶ 18(d)].

**Response: Deny as not supported by the cited evidence.**

Dated: February 5, 2024

                        Respectfully submitted,

                        **SMITH LEGAL ADVISORS LLC**

                        By: /s_____
                             Susan K. Smith, Esq.
                             Attorneys for Plaintiff
                             40 Worth Street, Suite 602
                             New York, New York 10013
                             Telephone: (920)689-3315
                             Email: sksmith@smithlegaladvisors.com

                        **PARKER HANSKI LLC**

                        By: /s_____
                             Robert G. Hanski, Esq.
                             Adam S. Hanski, Esq.
                             Attorneys for Plaintiff
                             40 Worth Street, Suite 602
                             New York, New York 10013
                             Telephone: (212) 248-7400
                             Facsimile: (212) 248-5600
                             Email: rgh@parkerhanski.com